**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

SAMARK JOSE LÓPEZ BELLO

           *Plaintiff,*

      v.

BRADLEY T. SMITH, in his official
Capacity as Acting Director, Office of
Foreign Assets Control, *et al.*,

           *Defendant.*
_____

Civil Action No. 1:21-cv-01727 (RBW)

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

INTRODUCTION …………………………………………………………………...1

BACKGROUND ……………………………………………………………………3

I.     Statutory and Regulatory Background ……………………………………3

II.    Statement of Facts …………………………………………………………...4

    A.    Plaintiff's Designation by OFAC …………………………………………4

    B.    OFAC's Evidentiary Memorandum …………………………………….....5

    C.    OFAC's Disclosure of Unclassified Summaries …………………………7

    D.    325 Leucadendra Drive, Coral Gables, Florida …………………………...8

    E.    Execution Against Plaintiff's U.S. Properties …………………….............9

    F.    Plaintiff's Indictment …………………………………………............9

    G.    Plaintiff's Amended Complaint …………………………………………...9

LEGAL STANDARDS ……………………………………………………………10

I.     Summary Judgment Standard ……………………………………………10

II.    Motion to Dismiss Standard …………………………………………….11

DISCUSSION ………………………………………………………………….....11

I.     Defendants' Designation of Plaintiff Constitutes Arbitrary and Capricious Agency Action in Violation of the APA ……………………………………………..11

    A.    Under the APA, Courts Must Hold Unlawful Agency Action, Findings, and Conclusions that are Arbitrary and Capricious …………………………..12

    B.    Defendants' Designation of Plaintiff Constitutes Arbitrary and Capricious Agency Action in Violation of the APA …………………………………13

    C.    Defendants' Arguments Are In Error ……………………………………15

II.  Defendants Violated the APA by Exceeding the Scope of Its Authority Under the Kingpin Act When Designating Plaintiff …………………………………………...17

    A.  Defendants Violated the APA By Exceeding Their Statutory Authorities Under the Kingpin Act When Designating Plaintiff ……………………..17

    B.  Defendants Violated the APA By Exceeding Their Statutory Authorities Under the Kingpin Act When Designating Plaintiff ……………………..18

    C.  Defendants' Arguments Fail to Excuse OFAC's Unlawful Action ………20

III.  Defendants Violated Plaintiff's Fifth Amendment Due Process Right …………..24

    A.  Defendants Violated Plaintiff's Fifth Amendment Right to Due Process by Failing to Accord Him Fair Notice of Prohibited Conduct ………………24

        i.  Plaintiff Has a Fifth Amendment Due Process Right to Fair Notice of Conduct That is Prohibited or Required by Law ………………24

        ii.  Defendants Failed to Provide Fair Notice of Conduct Made Sanctionable Under the Kingpin Act in Violation of Plaintiff's Fifth Amendment Due Process Rights …………………………………...25

        iii.  Defendants' Arguments Are In Error ……………………………27

    B.  Defendants' Failure to Provide Adequate Notice of the Reasons for Plaintiff's Designation Violates Plaintiff's Due Process Rights …………33

        i.  Due Process Requires Defendants to Provide Adequate Notice of the Reasons for Plaintiff's Designation Under the Kingpin Act …….33

        ii.  Defendants' Disclosures Fail to Adequately Apprise Plaintiff of the Reasons for His Designation Consistent with Due Process ……....34

        iii.  Defendants Fail to Comprehend the Scope of Their Notice Obligations Under the Due Process Clause ………………………37

IV.  OFAC's Blocking Action Constitutes an Unreasonable Seizure of Plaintiff's Property In Violation of the Fourth Amendment …………………………………...40

A.      Defendants Have Unreasonably Seized Plaintiff's Assets in Violation of His Rights Under the Fourth Amendment ……………………………….......40

B.      Defendants' Arguments In Support of Their Failure to Abide by the Fourth Amendment's Warrant Requirement are Unavailing …………………….41

CONCLUSION ……………………………………………………………………………45

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S.Ct. 2082 (2020) ………………27

*Aktieselskabet v. Fame Jeans*, 525 F.3d 8 (D.C. Cir. 2008) ……………………………………11

*Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*,

      686 F.3d 965 (9th Cir. 2012) …………………………………………34, 37, 38, 39, 44, 45

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………………………………...10

*Ass'n of Private Sector Coll. & Univs. v. Duncan*, 681 F.3d 427 (D.C. Cir. 2012) ………………18

*Banks v. Booth*, 3 F. 4th 445 (D.C. Cir. 2021) …………………………………………………20

*Bd. of Educ. v. Earls*, 536 U.S. 822 (2002) ……………………………………………………45

*Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007) ……………………………………………11

*BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) …………………………………...24

*Bowman Transp., Inc. v. Arkansas-Best Freight*, 491 U.S. 281 (1974) ……………………...12, 13

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) …………………………………………...11

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ……………………………12

*Carter v. George Washington Univ.*, 387 F.3d 872 (D.C. Cir. 2004) ……………………………10

*Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984) ………………18

*Children's Hosp. Ass'n v. Azar*, 933 F.3d 764 (D.C. Cir. 2019) …………………………………18

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) ………………………………12

*Connecticut Nat. Bank v. Germain*, 503 U.S. 249 (1992) ………………………………………...20

*Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780 (10th Cir. 2010) ………………………………18

*Fabi Construction Co. v. Sec'y of Labor*, 508 F.3d 1077 (D.C. Cir. 2007) …………………………25

*Fares v. Smith*, 249 F. Supp. 3d 115 (D.D.C. 2017) ……………………………………………...33

*Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) ……………………..33, 34, 36, 37, 38, 39, 40

*FCC v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012) …………………………...24, 25, 27

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ……………………………18

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) …………………………………………….25

*Herron v. Fannie Mae*, 861 F.3d 160 (D.C. Cir. 2017) …………………………………………..11

*Holy Land Found. for Relief and Dev. v. Ashcroft*, 219 F. Supp. 2d 57 (D.D.C. 2002) ……..22, 44

*Home Health Care, Inc. v. Heckler*, 717 F.2d 587 (D.C. Cir. 1983) …………………………14, 16

*Howmet Corp. v. EPA*, 614 F.3d 544 (D.C. Cir. 2010) …………………………………………30

*Illinois v. McArthur*, 531 U.S. 326 (2001) ……………………………………………………...44

*Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34 (D.D.C. 2005) ………44

*Kadi v. Geithner*, 42 F. Supp. 3d 1 (D.D.C. 2012) …………………………………11, 23, 43

*Karem v. Trump*, 960 F.3d 656 (D.C. Cir. 2020) …………………………………………24, 27

*Kiaraldeen v. Ashcroft*, 273 F.3d 542 (3d Cir. 2001) ……………………………………………33

*Kindhearts for Charitable Humanitarian Dev. v. Geithner*,

    647 F. Supp. 2d 857 (N.D. Ohio 2009) ……………………………………………44, 45

*King v. Burwell*, 576 U.S. 473 (2015) …………………………………………………………18

*King & Spalding LLP v. U.S. Dep't of Health and Human Servs.*,

    330 F. Supp. 3d 477 (D.D.C. 2018) …………………………………………………10

*Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*,

    826 F.3d 492 (D.C. Cir. 2016) ……………………………………………………...10

*Lyng v. Payne*, 476 U.S. 926 (1986) …………………………………………………………..18

*Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) …………………………………………………40

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ……………………………………………………33

*Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*,

    463 U.S. 29, 43 (1983) ………………………………………………………12, 15

*Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192 (D.C. Cir. 2001) …...28, 33, 34

*New Orleans v. SEC*, 969 F.2d 1163 (D.C. Cir. 1992) ………………………………………14, 16

*Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994) ……………………………18

*Pharm. Research & Mfrs. Of Am. v. Fed. Trade Comm'n*, 790 F.3d 198 (D.C. Cir. 2015) ……….18

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) ……………………………………………………..13

*Shaffer v. Heitner*, 433 U.S. 186 (1977) …………………………………………………………24

*Sierra Club v. Mainella*, 459 F. Supp. 2d 76 (D.D.C. 2006) ………………………………………12

*Soldal v. Cook Cty.*, 506 U.S. 56 (1992) …………………………………………………...41, 44

*Transohio Sav. Bank v. Director, OTS*, 967 F.2d 598 (D.C. Cir. 1992) …………………………..17

*Trinity Broadcasting of Fla., Inc. v. FCC*, 211 F.3d 618 (D.C. Cir. 2000) ………………………30

*United States v. Barona*, 56 F.3d 1087 (9th Cir. 1995) ……………………………………………42

*United States v. Jacobsen*, 466 U.S. 109 (1984) …………………………………………………41

*United States v. Place*, 462 U.S. 696 (1983) ……………………………………………………41

*United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) ……………………………...28, 42

*United States v. Williams*, 553 U.S. 285 (2008) …………………………………………………24

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ……………24

*Williams-Jones v. LaHood*, 656 F. Supp. 2d 63 (D.D.C. 2009) …………………………………..11

*Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150 (D.D.C. 2010) ……..23

*Zevallos v. Obama*, 10 F. Supp. 3d 111 (D.D.C. 2014) ………………………11, 33, 38, 40

*Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015) ………………………………………16, 22, 32

**STATUTES AND REGULATIONS**

5 U.S.C. § 701 *et seq.* ………………………………………………………..11, 12, 17, 18

21 U.S.C. § 1901 *et seq.* ………………………………………….1, 2, 3, 4, 5, 14, 15, 21, 22, 26

31 C.F.R. § 598.201 …………………………………………………………………….5

31 C.F.R. § 598.202 ………………………………………………………………..22, 41

31 C.F.R. § 598.701 ………………………………………………………………...22

**RULES**

Fed. R. Civ. P. 56 ………………………………………………………………...10

# INTRODUCTION

This case brings to the fore a simple question: Can the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC")—the agency charged with administering U.S. economic sanctions—impose those sanctions without providing fair notice of the conduct subject to regulation and without regard for the statutory limits placed on their authority?

In answering this question, the basic principles are clear: due process requires fair notice of what conduct is regulated prior to imposing any penalties for such conduct. Further, Defendants cannot exceed the scope of the legal authorities granted to them by Congress. If Defendants fail to provide fair notice of what conduct is regulated under its authorities or act in excess of their authority under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. § 1901 *et seq.*—then those actions must be deemed unlawful and remediated through vacatur.

In this matter, Defendants imposed sanctions on Plaintiff Samark Jose López Bello ("López Bello") under the Kingpin Act for his alleged material assistance in, or provision of financial or technological support for or to, or provision of goods or services to, the international narcotics trafficking activities of, and for purportedly acting for or on behalf of, Tareck Zaidan El Aissami Maddah ("El Aissami"). However, El Aissami was not designated under the Kingpin Act at the time that the purported support or services or acts on his behalf were alleged to have occurred. In other words, Plaintiff become aware that his purported dealings with El Aissami were sanctionable under the Kingpin Act when El Aissami himself was sanctioned. At that point, however, it would have been too late for Plaintiff to conform his purported conduct to the requirements of U.S. law, as OFAC announced Plaintiff's designation simultaneous with, and alongside that of, El Aissami. OFAC thus designated Plaintiff for alleged conduct that occurred prior to El Aissami's own designation. In doing so, Defendants denied Plaintiff fair notice that any purported dealings with

El Aissami were sanctionable under the Kingpin Act and eliminated any ability of Plaintiff to remediate his conduct (to the extent necessary) to act consistent with the requirements of U.S. law. Defendants' failure in this regard is an error of constitutional magnitude, violating Plaintiff's due process rights under the Fifth Amendment to the U.S. Constitution.

But the wrongful nature of Defendants' action lies not merely with OFAC's failure to accord Plaintiff fair notice of conduct sanctionable under the Kingpin Act, but also with its use of the Kingpin Act in excess of the authority granted by that statute. Specifically, the Kingpin Act's text is clear: the Secretary of the Treasury (or his or her delegees) are authorized to impose sanctions on foreign persons materially assisting in, or providing financial or technological support for or to, or providing goods or services to, the international narcotics trafficking activities of, or acting for or on behalf of a person designated pursuant to the Kingpin Act. *See* 21 U.S.C. § 1904(b)(2), (3). Here, however, El Aissami was not designated under the Kingpin Act at the time of the alleged conduct underlying Plaintiff's designation. Put plainly, absent El Aissami's designation under the Kingpin Act at the time of the alleged conduct, OFAC had no lawful basis under which to impose sanctions on Plaintiff for his purported relationship with El Aissami under §§ 1904(b)(2) or (b)(3) of the Kingpin Act. For OFAC to have done otherwise was an act *ultra vires*—beyond the scope of OFAC's authority under the Kingpin Act and without any lawful basis.

The consequences of Defendants' unlawful actions have been substantial: Plaintiff has had his life in the United States torn asunder—his residence in the United States the subject of forfeitures as a result of OFAC's designation action; his substantial assets in the United States blocked, or otherwise subject to forfeiture due to OFAC's action and its related allegations; and his person the subject of a criminal indictment for reasons solely stemming from his designation. While suffering these consequences, Defendants have failed to provide Plaintiff with notice

reasonably apprising him of the reasons for his designation and allowing him a meaningful opportunity to present rebuttal arguments and evidence. To the extent of OFAC's disclosures thus far, the factual basis for Plaintiff's designation appears to either wholly rely on a Venezuelan online publication without any apparent effort by OFAC to assess the credibility of the allegations set forth therein or lacking any requisite nexus to international narcotics trafficking activities, as demanded by the Kingpin Act.

The question for this Court is whether Defendants can persist in such wrongful conduct without consequence and given the harm caused to Plaintiff. Here, where Plaintiff held physical residence in the United States and a U.S. L-1 business visa prior to his designation, maintained all the indicia of family life, and had substantial real and personal property in the United States, Defendants must be held to account for their statutory and constitutional error.

## BACKGROUND

### I.    STATUTORY BACKGROUND

On December 3, 1999, the President signed into law the Foreign Narcotics Kingpin Designation Act, 21 U.S.C. § 1901 *et seq*. The Kingpin Act was designed to "provide authority for the identification of, and application of sanctions on a worldwide basis to, significant foreign narcotics traffickers, their organizations, and the foreign persons who provide support to those significant foreign narcotics traffickers and their organizations, whose activities threaten the national security, foreign policy, and economy of the United States." 21 U.S.C. § 1902.

To achieve this objective, the Kingpin Act provides authority to the Secretary of the Treasury, acting in consultation with other federal agencies, to designate:

- ▪    Any foreign person materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of,

the international narcotics trafficking activities of a significant foreign narcotics trafficker or foreign persons designated by the Secretary of the Treasury pursuant to the Kingpin Act;

▪ Any foreign person owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker or foreign persons designated by the Secretary of the Treasury pursuant to the Kingpin Act; and

▪ Any foreign person playing a significant role in international narcotics trafficking.

21 U.S.C. § 1904(b)(2)-(4). Foreign persons who are designated pursuant to these authorities are subject to blocking sanctions under the Kingpin Act. 21 U.S.C. § 1904(b). The Kingpin Act also prohibits any transaction or dealing by a U.S. person, or within the United States, in the property or property interests of a foreign person subject to sanctions pursuant to 21 U.S.C. § 1904(b), as well as any transaction or dealing by a U.S. person, or within the United States, that evades or avoids, or has the effect of evading or avoiding, and any endeavor, attempt, or conspiracy to violate, the Kingpin Act's prohibitions. 21 U.S.C. § 1904(c).

II.   STATEMENT OF FACTS

A.   *Plaintiff's Designation by OFAC*

On February 13, 2017, OFAC designated El Aissami as a Specially Designated Narcotics Trafficker ("SDNTK") pursuant to the Kingpin Act for playing a significant role in international narcotics trafficking. A.R. 0006-0007. Simultaneous with this designation, OFAC designated Plaintiff pursuant to the Kingpin Act for allegedly providing material assistance, financial support, or goods or services in support of the international narcotics trafficking activities of El

Aissami and for allegedly acting for or on behalf of El Aissami. *Id*. In addition, OFAC designated or identified as blocked property thirteen companies alleged to be owned or controlled by Plaintiff, including five U.S. companies. *Id*.

In a press release issued at the time of the designation, OFAC alleged that Plaintiff "is a key frontman of El Aissami and in that capacity launders drug proceeds." *Id*. OFAC alleged that Plaintiff "is used by El Aissami to purchase certain assets" and "handles business arrangements and financial matters for El Aissami, generating significant profits as a result of illegal activity benefiting El Aissami." *Id*.

As a consequence of his designation, all property in which Plaintiff maintains an interest that is or comes within the United States or the possession or control of a U.S. person, wherever located, is blocked, and U.S. persons are generally prohibited from engaging in transactions or dealings with Plaintiff or property in which he maintains an interest. 21 U.S.C. § 1904(b); 31 C.F.R. § 598.201. In addition, foreign persons that engage in transactions or dealings with Plaintiff are exposed to sanctions pursuant to the Kingpin Act. 21 U.S.C. § 1904(b)(1)-(4).

### B.     OFAC's Evidentiary Memorandum

In determining that Plaintiff meets the criteria for designation pursuant to the Kingpin Act, OFAC drafted an evidentiary memorandum setting forth the factual and legal basis for its decision to designate Plaintiff. Plaintiff received only a heavily-redacted version of this evidentiary memorandum with substantial portions of the factual claims underlying the designation withheld from disclosure. AR 0009-0050.

OFAC's evidentiary memorandum states that "[t]he information . . . in this memorandum . . . provide[s] reason to believe that [Plaintiff] is a 'foreign person' who is materially assisting in, or providing financial or technological support for or to, or providing goods or services in

support of, the international narcotics trafficking activities of an individual proposed for designation in th[e] memorandum; and/or owned, controlled, or directed by, or acting for or on behalf of, an individual proposed for designation in th[e] memorandum." AR 0011-0012. For this reason, according to OFAC, Plaintiff "meets the statutory criteria for designation as a Specially Designated Narcotics Trafficker pursuant to sections 805(b)(2), (3) . . . of the [Kingpin Act] . . ." AR 0012. In addition, OFAC states that "the evidence . . . in this memorandum . . . provide[s] reason to believe that each of the U.S. entities and aircraft identified [therein] is property within the United States that is owned or controlled by [Plaintiff] . . ." AR 0012.

In the section of the memorandum relating the basis for Plaintiff's designation, OFAC redacts all relevant information with the exception of part of the header ("[redacted] LOPEZ BELLO acting as a financial manager and front man for EL AISSAMI") and a single paragraph, the latter of which states that a July 2013 article in a Venezuelan newspaper *Reportero 24* stated that Plaintiff "is 'linked as [a] front m[a]n' for EL AISSAMI" and that Plaintiff "has an estimated net worth of $1 billion." AR 0025, 0027.

In addition, OFAC's memorandum states that Plaintiff "plays a documented role in the following entities," some of which are U.S. entities and others of which are foreign entities. AR 0029. For purposes relevant herein, OFAC alleges that the following properties are those within the United States that are owned or controlled by Plaintiff:

- 1425 Brickell Ave 63-F LLC, a Florida limited liability company, for which, according to OFAC's memorandum, López Bello serves as the "sole manager." AR 0038.

- 1425 Brickell Avenue Unit 46B, LLC, a Florida limited liability company, for which, according to OFAC's memorandum, López Bello serves as the "sole manager." AR 0039.

- 1425 Brickell Avenue 64E LLC, a Florida limited liability company, for which, according to OFAC's memorandum, López Bello serves as the "sole manager." AR 0040.

- Agusta Grand LLC, a Delaware limited liability company, for which, according to OFAC's memorandum, López Bello serves as the "sole manager." AR 0040-0041.

- 200G PSA Holdings LLC, a Delaware limited liability company, for which, according to OFAC's memorandum, López Bello is the "sole stockholder" and serves as manager. AR 0041-0042.

OFAC's memorandum also identified an aircraft as owned or controlled by 200G PSA Holdings LLC, an entity blocked by virtue of Plaintiff's purported ownership or control. AR 0042-0043. Finally, for purposes relevant herein, OFAC alleges that Yakima Oil Trading LLP—an entity blocked by OFAC for allegedly being owned or controlled by Plaintiff—"leased 2,437 square feet of office space on the 25th floor at 375 Park Avenue, New York." AR 0037.

### C. OFAC's Disclosure of Unclassified Summaries

On July 18, 2017, OFAC disclosed additional unclassified, non-privileged, and otherwise releasable information from the administrative record. According to OFAC, the unclassified summaries of classified or otherwise privileged information contained in the administrative record—totaling four paragraphs—"complete[d] OFAC's response to [Plaintiff's] request for releasable information" relating to the basis for his designation under the Kingpin Act. AR 0657. These unclassified summaries stated the following:

- Venezuelan national Samark Jose Lopez Bello is the "frontman" for Tareck El Aissami.

- Lopez Bello is in charge of laundering drug proceeds through Petroleos de Venezuela, S.A. (PDVSA) and organizing the air and maritime cocaine routes to transport cocaine to the Middle East and Asia. Lopez Bello was also used by El Aissami to purchase news outlets in Venezuela, which were

the most critical of the Chavez regime, with Venezuelan government funds in order to influence public opinion in Venezuela.

▪   Lopez Bello is identified as the "business representative," "money manager," and "money launderer" for El Aissami.

▪   Lopez Bello handles financial matters for El Aissami. Lopez Bello also manages Venezuelan bonds, as a private party, and conducts unspecific deals which generate significant profits. This activity is done to benefit El Aissami via Lopez Bello. Lopez Bello also has procured vehicles in the U.S. that were transported to Venezuela and ultimately went to El Aissami and other Venezuelan government officials.

AR 0658. OFAC has not provided any additional detail regarding the factual basis for its decision to designate Plaintiff pursuant to the Kingpin Act nor any of the supporting evidence for the allegations contained in these unclassified summaries.

D.      325 Leucadendra Drive, Coral Gables, Florida

On April 22, 2017, OFAC disclosed a redacted, unclassified version of the evidentiary memorandum relating to the blocking of additional property in which OFAC alleged that Plaintiff maintained an interest. According to this memorandum, OFAC stated that "[t]he information presented [therein] . . . provide reason to believe that 325 Leucadendra Drive, Coral Gables, Florida . . . is property, within the United States, in which [Plaintiff] has an interest and therefore meets the criteria for blocking [pursuant to the Kingpin Act]." According to OFAC, "evidence indicates that [Plaintiff] owns the Property, including his name appearing in the file name for the deed . . ."

Prior to its blocking by OFAC, Plaintiff and his family used this property as their primary residence in the United States. *See* Am. Compl., Exhibit B, ECF No. 8. As a direct result of the blocking, this property became subject to a writ of execution issued by the United States District Court for the Southern District of Florida to satisfy a judgment against the Revolutionary Armed Forces of Columbia ("FARC").

### E.    Execution Against Plaintiff's U.S. Properties

As a direct result of his designation by OFAC and OFAC's allegations against him, third party plaintiffs have sought to execute, and have executed, on their outstanding judgments against the FARC against properties owned or controlled by Plaintiff in the United States. Am. Compl., ¶¶ 87-111. Plaintiff has thus been deprived of his U.S.-based properties due to OFAC's decision to designate him pursuant to the Kingpin Act.

### F.    Plaintiff's Indictment

On March 8, 2019, the United States Attorney's Office for the Southern District of New York announced criminal charges against Plaintiff for alleged violations of the Kingpin Act. Press Release, U.S. Dep't of Justice, Venezuelan Minister and Foreign Vice President Tareck Zaidan El Aissami Maddah Charged With Violations of the Foreign Narcotics Kingpin Designation Act (March 8, 2019). Plaintiff was specifically charged with evading or avoiding the Kingpin Act's prohibitions, or with conspiring to violate the Kingpin Act, by working with U.S. persons and visa-holders to obtain certain travel services, including private jet charters. Superseding Indictment (DN#67), *United States v. Coro, et al.*, 1:19-cr-00144-AKH-6 (S.D.N.Y. March 13, 2020). These criminal charges are predicated on the allegation that Plaintiff —as a Specially Designated Narcotics Trafficker—sought to engage in transactions with, or receive services from, U.S. persons in purported violation of the Kingpin Act. These criminal charges do not include any drug trafficking or money laundering charges.

### G.    Plaintiff's Amended Complaint

On October 4, 2021, Plaintiff amended his complaint. Am. Compl., ECF No. 8. The Amended Complaint challenges OFAC's designation of Plaintiff pursuant to the Kingpin Act for being arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in

violation of the APA; for being in excess of statutory jurisdiction, limitations, or authorities in violation of the APA; and for being contrary to constitutional right, power, privilege, or immunity in violation of the APA. Am. Compl. ¶¶ 126-128, 129-131, 138-140. In addition, the Amended Complaint challenges OFAC's failure to provide fair notice when designating Plaintiff under the Kingpin Act in violation of the Fifth Amendment's Due Process Clause and further alleges that OFAC's designation of Plaintiff is in violation of his Fourth Amendment right to be free from unreasonable seizures. Am. Compl. ¶¶ 132-134, 135-137. Finally, the Amended Complaint challenges OFAC's failure to accord Plaintiff adequate notice of the reasons for his Kingpin Act designation in violation of the Fifth Amendment's Due Process Clause and the APA. Am. Compl. ¶¶ 142-144, 145-147.

## LEGAL STANDARDS

### I.   LEGAL STANDARDS

#### A.   *Summary Judgment Standard*

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is 'genuine' only if a reasonable fact-finder could find for the nonmoving party, and a fact is 'material' only if it is capable of affecting the outcome of the litigation." *King & Spalding LLP v. U.S. Dep't of Health and Human Servs.*, 330 F. Supp. 3d 477, 487 (D.D.C. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Granting summary judgment is appropriate if "when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citing *Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004)).

When a court reviews agency action under the APA, 5 U.S.C. § 701 *et seq.*, "[t]he entire case on review is a question of law, and only a question of law." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). Summary judgment "serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012).

### B.   Motion to Dismiss Standard

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a plaintiff's complaint; it does not require a court to 'assess the truth of what is asserted or determine whether a plaintiff has any evidence to back up what is in the complaint.'" *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). In resolving a Rule 12(b)(6) motion, "the court must treat the complaint's factual allegations—including mixed questions of law and facts—as true and draw all reasonable inferences therefrom in the plaintiff's favor." *Williams-Jones v. LaHood*, 656 F. Supp. 2d 63, 67 (D.D.C. 2009). To survive a motion to dismiss, the facts alleged must state a facially plausible claim for relief and the court must accept as true all material factual allegations. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556 (2007). A court "must not make any judgment about the probability of the plaintiff's success, for a complaint may proceed even if it appears that a recovery is remote and unlikely." *Aktieselskabet v. Fame Jeans*, 525 F.3d 8, 17 (D.C. Cir. 2008); *see generally Twombly*, 550 U.S. at 554 (2007).

## DISCUSSION

I.   **DEFENDANTS' DESIGNATION OF PLAINTIFF CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION IN VIOLATION OF THE APA**

A.    **Under the APA, Courts Must Hold Unlawful Agency Action, Findings, and Conclusions that are Arbitrary and Capricious**

Under the APA, courts are tasked with setting aside and holding unlawful agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). In conducting its review of an APA claim, a court must determine whether, as a matter of law, "the evidence in the administrative record permitted the agency to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006). This involves ascertaining whether the agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)). Even as an agency's decision is entitled to a "presumption of regularity," a court must conduct a "thorough, probing, in-depth review." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415 (1971).

Such "in-depth review" must include determining "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp., Inc. v. Arkansas-Best Freight*, 491 U.S. 281, 285 (1974) (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 416). For instance, a court shall set aside agency action as arbitrary and capricious where the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise . . ." *State Farm*, 463 U.S. at 42-43. To the extent that a court identifies deficiencies in the agency's decision or reasoning, it cannot remedy those deficiencies by "supply[ing] a reasoned basis for the agency's action that

the agency itself has not given." *Bowman Transp., Inc.*, 419 U.S. at 286. Instead, a court is limited to judging the permissibility of an agency action on the basis of the contemporaneous explanation offered by the agency itself. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

### B.   Defendants' Designation of Plaintiff Constitutes Arbitrary and Capricious Agency Action in Violation of the APA

Defendants acted arbitrarily and capriciously in violation of the APA when it designated Plaintiff under the Kingpin Act for three reasons. First, the simultaneous designation of El Aissami and Plaintiff as a derivative designee of El Aissami's designation constitutes arbitrary and capricious agency action. This is because the administrative record does not and cannot show that Plaintiff materially assisted in, or provided financial or technological support or services for or to, or provided goods or services in support of, the international narcotics trafficking activities of, or acted for or on behalf of, a person designated under the Kingpin Act. This is because El Aissami was not designated under the Kingpin Act at the time of the conduct alleged by OFAC in support of Plaintiff's designation. As a result, the administrative record cannot support a legal determination that Plaintiff met the criteria for designation under the Kingpin Act.

Because El Aissami was not a person designated under the Kingpin Act at the time of the conduct alleged in the administrative record, there can be no rational connection between the facts found in the administrative record and the choice made by OFAC—i.e., its determination that Plaintiff materially assisted, or provided support or services for or to, the international narcotics trafficking activities of, or acted for or on behalf of, a person designated under the Kingpin Act. Absent such rational connection, Plaintiff's designation by OFAC constitutes arbitrary and capricious agency action in violation of the APA.

Second, OFAC's apparent reliance on news reporting from Venezuelan online news publications without any effort to corroborate the allegations set forth therein constitutes arbitrary

and capricious agency action in violation of the APA as well. As the D.C. Circuit held in *New Orleans v. SEC*, 969 F.2d 1163 (D.C. Cir. 1992), "an agency's reliance on a report or study without ascertaining the accuracy of the data contained in the study or the methodology used to collect the data" constitutes arbitrary and capricious agency action under the APA, as any findings reliant on such reports or studies "are unsupported by substantial evidence." *Id*. at 1167 (quoting *Home Health Care, Inc. v. Heckler*, 717 F.2d 587, 592 (D.C. Cir. 1983). Based on the unclassified version of the administrative record, OFAC made a finding that Plaintiff "act[ed] as a financial manager and front man of [El Aissami]." AR 0025. This finding appears to be sourced from a July 2013 article published by Venezuelan newspaper *Reportero 24* which stated that Plaintiff "is 'linked as [a] front m[a]n' for [El Aissami]." AR 0027. Nothing in the record indicates that OFAC assessed the accuracy of the information set forth in the newspaper article or the methodology by which *Reportero 24* came to make such allegation.[1] Reliance on this article—absent any effort to assess the accuracy or credibility—is arbitrary and capricious and in clear violation of the APA.

Third, nearly all of OFAC's factual allegations lack an apparent nexus to El Aissami's narcotics trafficking activities, a requirement for Plaintiff's designation under 21 U.S.C. § 1904(b)(2). Those unclassified summaries allege that Plaintiff "is the 'frontman' for Tareck El Aissami," that Plaintiff "was used by El Aissami to purchase news outlets in Venezuela," that Plaintiff "is identified as the 'business representative,' 'money manager,' and 'money launderer' for El Aissami," and that Plaintiff "handles financial matters for El Aissami." AR 0658. Those allegations, however, do not describe how such alleged conduct relates to the *international narcotics trafficking activities* of El Aissami. As a result, they do not rational connect to OFAC's

---

[1] There existed good reason to assess the credibility of the reporting as well. Most notably, the picture used in the article is not a picture of Plaintiff, despite its characterization otherwise. The image, however, is not included in the administrative record here. AR 0201.

determination that Plaintiff supports El Aissami's international narcotics trafficking activities. Indeed, nowhere in the administrative record does OFAC "articulate a satisfactory explanation for its action," as to how Plaintiff's purported conduct support El Aissami's international narcotics trafficking activities. *State Farm*, 463 U.S. at 43. By failing to connect Plaintiff's alleged conduct to El Aissami's international narcotics trafficking activities, OFAC has "entirely failed to consider an important aspect of the problem," rendering its designation of Plaintiff under 21 U.S.C. § 1904(b)(2) arbitrary and capricious in violation of the APA. *Id.* at 42-43.

### C.    Defendants' Arguments Are In Error

Defendants argue that the Court "should uphold OFAC's decision to designate Plaintiff" in consideration of "the highly deferential standard of review" to be applied here. Defs. Mem. In Support of Mot. to Dismiss or, In the Alternative, for Summ. J. ("Defs. Mem.") at *13, ECF No. 10 (Nov. 3, 2021). This is because, according to Defendants, "[t]he unclassified and non-privileged portions of the administrative record alone provide a rational basis for the agency's determination" that Plaintiff meets the criteria for designation under the Kingpin Act. *Id.*

Defendants first argue that Plaintiff's "disagreement [with OFAC's findings] . . . does not establish that OFAC's designation decision was arbitrary and capricious" and Plaintiff "provides no reason to doubt the agency's fact-finding process . . ." Defs. Mem. at 15. But Plaintiff does not just "disagree" with OFAC's "findings"; he alleges that OFAC relied on allegations from third-party sources without assessing the accuracy or credibility of the allegations or the sources leveling those allegations. Am. Compl. at ¶¶ 37-38. Plaintiff further alleges that OFAC's "findings" lack the requisite nexus to international narcotics trafficking activities, as required by designations made pursuant to § 1904(b)(2). These are the obvious errors in OFAC's judgment, as evidenced by the disclosed portions of the administrative record and the unclassified

summaries. OFAC's failure to provide a more robust disclosure that would allow Plaintiff to fully understand the reasons for his designation unlawfully inhibits him from further challenging OFAC's decision and the allegations used to support it.

Defendants further argue that OFAC need not "expressly assign credibility determinations to every source of information in order to survive an APA challenge," as such assessments of credibility—including of open-source information relied on by OFAC—are not required. Defs. Mem. at 15 (relying on *Zevallos v. Obama*, 793 F.3d 106, 112-13 (D.C. Cir. 2015)). The D.C. Circuit, however, did not find that credibility determinations are never required; instead, the D.C. Circuit in *Zevallos* stated merely that the Court "ha[s] approved the use of such materials"—such as "'unverified open source materials' like news media reports"—*as part of the unclassified record* supporting the decision to designate an individual or entity for inclusion on the [SDN List] . . ." *Zevallos*, 793 F.3d at 112-13 (emphasis added). Indeed, the D.C. Circuit has held that "an agency's reliance on a report or study without ascertaining the accuracy of the data contained in the study or the methodology used to collect the data" is arbitrary and capricious under the APA and that any findings relying on such sources "are unsupported by substantial evidence." *City of New Orleans*, 969 F.2d at 1167 (citing *Home Health Care, Inc.*, 717 F.2d at 592). In this matter, OFAC's reliance on this newspaper report appears to form a central piece of evidence to OFAC's finding that Plaintiff purportedly acts as a "front-man" for El Aissami. That finding, in turn, is used to determine that Plaintiff meets the criteria for designation under the Kingpin Act. Failing to assess the accuracy or credibility of such a central piece of evidence therefore not only impacts some part of the administrative record; rather, it impacts a central premise of OFAC's proffered factual basis for imposing the designation. Indeed, it is not and cannot be the case that OFAC has no legal obligation to assess the credibility or accuracy of the key reporting on which they rely

16

for their designation actions. As a result, OFAC's failure in to do so in this matter raises serious questions about the merits of OFAC's fact-finding procedures and triggers the APA's bar against arbitrary and capricious agency action.

Defendants finally argue that OFAC's unclassified summaries suffice to show support for Plaintiff's designation under the Kingpin Act. Defs. Mem. At 16-17. While Defendants acknowledge that a designation made under § 1904(b)(2) requires "a link to international narcotics trafficking" and that the unclassified summaries largely fail to allege such nexus, they nevertheless argue that "the totality of evidence" supports OFAC's determination that Plaintiff meets the criteria for designation under § 1904(b)(2). Defs. Mem. At 17. That appears to be an effective admission that the unclassified summaries, by themselves,  do not support a designation made pursuant to § 1904(b)(2). Such admission thus needs to be considered in light of the contents of the disclosed administrative record, which likewise fails to allege such nexus. When considered in tandem, the totality of the evidence supports Plaintiff's argument that a sufficient nexus to the international narcotics trafficking activities of a person designated under the Kingpin Act has not been demonstrated.

## II.   DEFENDANTS VIOLATED THE APA BY EXCEEDING THE SCOPE OF ITS AUTHORITY UNDER THE KINGPIN ACT WHEN DESIGNATING PLAINTIFF

### A.   Under the APA, Courts Must Set Aside and Hold Unlawful Agency Action in Excess of Statutory Jurisdiction, Limitations, or Authority

Under the APA, courts are tasked with setting aside and holding unlawful agency action, findings, and conclusions determined to be in excess of statutory jurisdiction, limitations, or authority. 5 U.S.C. § 706(2)(C). "It is 'central to the real meaning of 'rule of law,' [and] not particularly controversial' that a federal agency does not have the power to act unless Congress, by statute, has empowered it to do so." *Transohio Sav. Bank v. Director, OTS*, 967 F.2d 598, 621

(D.C. Cir. 1992) (holding that "[a]gency actions beyond delegated authority are 'ultra vires,' and courts must invalidate them."). A court's "essential function" is to "determin[e] whether an agency acted within the scope of its authority," *Copar Pumice Co., Inc. v. Tidwell*, 603 F.3d 780, 801 (10th Cir. 2010) (quoting *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994)), as "agency's power is no greater than that delegated to it by Congress." *Lyng v. Payne*, 476 U.S. 926, 937 (1986).

Typically, when reviewing claims made pursuant to 5 U.S.C. § 706(2)(C), courts apply "the well-known *Chevron* framework." *Children's Hosp. Ass'n v. Azar*, 933 F.3d 764, 770 (D.C. Cir. 2019); *see also Pharm. Research & Mfrs. Of Am. v. Fed. Trade Comm'n*, 790 F.3d 198, 204 (D.C. Cir. 2015); *Ass'n of Private Sector Coll. & Univs. v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012). Under the *Chevron* doctrine, "[t]he first step is to determine whether Congress has directly addressed the 'precise question at issue.'" *Pharm. Research & Mfrs. of Am.*, 790 F.3d at 204 (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842 (1984)). "[W]hether Congress has directly spoken to the precise question at issue is shaped, at least in some measure, by the nature of the question presented," with courts assuming that Congress has considered the more important questions. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000). If Congress has addressed the issue, then a court's inquiry ends there. However, if Congress has not directly addressed the issue in question, then a court asks "whether the agency's interpretation is reasonable." *Children's Hosp. Ass'n*, 933 F.3d at 770 (quoting *King v. Burwell*, 576 U.S. 473, 485 (2015)). If an agency's interpretation is determined to be reasonable, then the agency action is upheld.

  **B.**  **Defendants Violated the APA By Exceeding Their Statutory Authorities Under the Kingpin Act When Designating Plaintiff**

Defendants acted beyond the scope of their statutory authorities under the Kingpin Act when OFAC designated Plaintiff for materially assisting in, or providing financial or technological support or services for or to, or providing goods or services in support of, the international narcotics trafficking activities of, and for acting for or on behalf of, El Aissami, a person who was not designated under the Kingpin Act.

The Kingpin Act's statutory criteria for designation are clear: under § 1904(b)(2), the Secretary of the Treasury (or his or her delegees) can designate foreign persons who are materially assisting in, or providing financial or technological support or services for or to, or providing goods or services in support of, the international narcotics trafficking activities of either a significant foreign narcotics trafficker or any person designated pursuant to § 1904(b) of the Kingpin Act. Similarly, § 1904(b)(3) of the Kingpin Act authorizes the Secretary of the Treasury to designate foreign persons who act for or on behalf of a significant foreign narcotics trafficker or a person designated pursuant to § 1904(b) of the Kingpin Act. Under both designation criteria, the sanctionable conduct must be performed to or in support of, or for or on behalf of, a person otherwise designated under the Kingpin Act.

In this case, El Aissami was not designated under the Kingpin Act prior to Plaintiff's own designation. This means that Plaintiff was designated by OFAC on the basis of alleged conduct that was not sanctionable by the plain language of the Kingpin Act. Even assuming that OFAC's allegations regarding his activities were true—they were not—those allegations could not serve as a basis by which OFAC could have permissibly designated Plaintiff. This is because the allegations could not show that Plaintiff engaged in conduct involving a person designated under the Kingpin Act at the time of its occurrence.

Because a plain language reading of the Kingpin Act commands the finding that OFAC acted beyond the scope of their statutory authority when designating Plaintiff, the Court need not ask whether OFAC's interpretation of its authorities under the Kingpin Act is "reasonable." Through the Kingpin Act and that statute's designation criteria, Congress provided authority to the Secretary of the Treasury to designate persons that provide material assistance, support, and services to the international narcotics trafficking activities of, or that act for or on behalf of, *persons designated under the Kingpin Act*. If Congress had instead sought to permit the kind of action undertaken by Defendants in this case, then it would have chosen different language to give expression to that intention. For instance, the Kingpin Act could have empowered the Secretary of the Treasury to designate foreign persons that provide material assistance, support, and services to the international narcotics trafficking activities of, or that act for or on behalf of, persons engaged in narcotics trafficking activities or their supporters. But Congress did not choose such language, and this Court should find that Congress had its reasons for requiring prior designation before imposing sanctions on persons providing support and services to significant foreign narcotics traffickers or other persons subject to sanctions under the Kingpin Act. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (Congress "means in a statute what it says there."); *see also Banks v. Booth*, 3 F.4th 445, 449 (D.C. Cir. 2021) ("We have frequently stated that Congress says what it means and means what it says.").

### C. Defendants' Arguments Fail to Excuse OFAC's Unlawful Action

Defendants pose several challenges to Plaintiff's claim that OFAC acted in excess of statutory jurisdiction, authority, or limitations in violation of the APA. Each of these challenges, however, fails.

First, Defendants argue that OFAC's simultaneous designation of El Aissami and Plaintiff was permissible, as "the Kingpin Act does not speak to the timing or sequencing of OFAC's sanctions-related decisions." Defs. Mem. at 18. But the Kingpin Act's language only renders sanctionable the material assistance in, or the provision of financial or technological support for or to, or the provision of goods or services in support of, the international narcotics trafficking activities of a *significant foreign narcotics trafficker or a foreign person designated by the Secretary of the Treasury under the Kingpin Act*. 21 U.S.C. § 1904(b)(2). Here, El Aissami was neither a "significant foreign narcotics trafficker"—which requires his identification as such under the Kingpin Act—nor a foreign person designated under the Kingpin Act prior to Plaintiff's own designation. This means that Plaintiff —as a matter of law—could not have engaged in conduct made sanctionable by 21 U.S.C. § 1904(b)(2) prior to El Aissami's designation. While Defendants argue an apparent lack of temporal limitation in the Kingpin Act to argue that the Kingpin Act does not forbid simultaneous designation, such limitation indeed exists. That limitation is expressed by the plain language of the Kingpin Act insofar as a foreign person engages in sanctionable conduct under 21 U.S.C. § 1904(b)(2) and (3) only where that person is engaged in dealings with persons designated pursuant to the Kingpin Act. Defendants do not argue—for obvious reason—that El Aissami was designated pursuant to the Kingpin Act at the time of the conduct alleged in the administrative record.

Unable to reconcile their determination with the plain language of the statute, Defendants resort to policy arguments for why the Kingpin Act's language should not bind them when rendering designations. However, regardless of whether Defendants' action was done in the spirit of the Kingpin Act, it was clearly not done within the grant of authority provided by that statute. Indeed, neither the purported spirit of Defendants' actions nor their policy arguments can displace

the express nature of Kingpin Act's language and the limitations set by the designation criteria set forth at 21 U.S.C. § 1904(b)(2) and (3). Defendants do not muster a single case to support the proposition that a federal agency can ignore statutory limits and act beyond the scope of their authority to achieve their policy objectives.

Defendants' policy arguments are confused as well: Defendants argue that OFAC "must account for the possibility that individuals with ties to a newly-designated narcotics trafficker will illicitly move money on behalf of that trafficker or in furtherance of his nefarious operations." Defs. Mem. at 19. In doing so, Defendants cite to case law finding that the risk of asset flight overweighs the need to provide pre-deprivation notice to sanctioned persons. *Id*. However, to the extent that funds that a designated person owns or controls are based in the United States, those funds would either be blocked and/or any dealing in the funds would be subject to serious criminal penalties. *See* 31 C.F.R. §§ 598.202; 598.701. Similarly, to the extent the funds are outside the United States, OFAC retains the ability to sanction persons for engaging in transactions or dealings that are sanctionable under the Kingpin Act. 21 U.S.C. § 1904. That is the statutory and policy design of the Kingpin Act, as intended by Congress.

Defendants, however, misapprehend the case law to argue that Congress could have intended no other result than to permit the simultaneous designation of a designee and their derivative. Defendants first appear to argue that—because *pre-deprivation notice* of OFAC's actions is not required—*fair notice* as to what the laws and regulations administered by OFAC require is also not mandated. Defs. Mem. at 20 (citing to *Zevallos v. Obama*, 793 F.3d 106, 117 (D.C. Cir. 2015) and *Holy Land Found. for Relief and Dev. v. Ashcroft*, 219 F. Supp. 2d 57, 74 n.28 (D.D.C. 2002), which are both cases dealing with pre-deprivation notice). This confuses these two notice requirements under the Due Process Clause: whether a person is due pre-

deprivation notice is an entirely separate question than whether the person has received fair notice of what conduct is prohibited or regulated by law. Defendants repeat their failure to comprehend the meaning and purpose of the fair notice doctrine, stating that "underlying [Plaintiff's] argument is the incorrect premise that OFAC may only designate individuals who knowingly engage in sanctionable conduct." Defs. Mem. at 21. But that is not Plaintiff's "premise" at all: instead, Plaintiff's argument is merely that OFAC is required under the Due Process Clause to provide fair notice of conduct that is prohibited by law, and that the Kingpin Act does not permit derivative designations for conduct relating to persons who were not designated at the time of that conduct.

Defendants further cite to *Kadi v. Geithner*, stating that—because the court in that matter upheld Kadi's designation under Executive Order ("E.O.") 13224 despite his simultaneous designation with the person to whom he was alleged to illicitly provide financial support—the matter is "especially instructive." Defs. Mem. at 21. *Kadi* is inapplicable, though, for multiple reasons. First, *Kadi* does not deal with a Kingpin Act designation but rather one under the International Emergency Economic Powers Act ("IEEPA")—an entirely different statute, and under an Executive order with completely distinct and separate designation criteria. Second, Kadi did not raise a fair notice claim under the Fifth Amendment so the matter was not adjudicated and the court in that case had nothing to say about whether the simultaneous designation of a designee and his derivative would violate the Due Process Clause of the Fifth Amendment.

Finally, Defendants argue that "[t]he Court should defer to OFAC's decision," citing to *Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150 (D.D.C. 2010) for the proposition that the Court has traditionally declined "to adjudicate [] matters of strategy and tactics relating to the conduct of foreign policy . . ." Defs. Mem. at 22. That case, however, dealt with OFAC's denial of a specific license to unblock funds that had been properly blocked under

its regulations. The court in that case declined to interfere in OFAC's licensing decisions, which are generally discretionary in nature and which are not subject to the type of statutory limitations at issue in this case. Whether to intervene with respect to OFAC's use of discretionary authorities is an entirely separate issue from reviewing whether OFAC has acted within the scope of its statutory authorities. Moreover, in undertaking the latter view, Plaintiff is merely seeking the Court's apprehension of the limits of the Kingpin Act's authorities, not to "adjudicate [] matters of strategy and tactics related to the conduct of foreign policy." *Id*.

## III.   DEFENDANTS VIOLATED PLAINTIFF'S FIFTH AMENDMENT DUE PROCESS RIGHT

### A.   Defendants Violated Plaintiff's Fifth Amendment Right to Due Process by Failing to Accord Him Fair Notice of Prohibited Conduct

#### i.   Plaintiff Has a Fifth Amendment Due Process Right to Fair Notice of Conduct That is Prohibited or Required by Law

It is "[a] fundamental principle in our legal system . . . that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *Karem v. Trump*, 960 F.3d 656, 664 (D.C. Cir. 2020) (quoting *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012)). This protection of fair notice "is implicated" not just in the context of criminal matters, but also where the government imposes "civil *penalties*." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 n.22 (1996) (citing *Shaffer v. Heitner*, 433 U.S. 186, 217 (1977) (Stevens, J., concurring in judgment)) (emphasis in original). Indeed, if civil penalties "threaten[] to inhibit the exercise of constitutionally protected rights," courts are likely to demand greater clarity with respect to the requirements of law. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982).

Generally, such civil penalties "fail[] to comply with due process if the statute or regulation under which it is obtained 'fails to provide a person of ordinary intelligence fair notice

of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Fox Television Stations, Inc.*, 567 U.S. at 253 (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)). This standard helps ensure "that regulated parties [] know what is required of them so that they may act accordingly," while aiding "those enforcing the law [so that they] do not act in an arbitrary or discriminatory way." *Fox Television Stations, Inc.*, 567 U.S. at 253 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972)).

To determine whether an agency provided fair notice to those being regulated, courts "ask whether the regulated party received, or should have received, notice of the agency's interpretation in the most obvious way of all: by reading the regulations." *Fabi Construction Co. v. Sec'y of Labor*, 508 F.3d 1077, 1088 (D.C. Cir. 2007) (quoting *General Elec. Co. v. EPA*, 53 F.3d 1324, 1329 (D.C. Cir. 1995)). If a court determines that, "by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify, with 'ascertainable certainty,' the standards with which the agency expects parties to conform," then the agency has met its burden of providing fair notice under the Due Process Clause of the Fifth Amendment. *Id.*

ii. Defendants Failed to Provide Fair Notice of Conduct Made Sanctionable Under the Kingpin Act in Violation of Plaintiff's Fifth Amendment Due Process Rights

Defendants violated Plaintiff's due process rights under the Fifth Amendment to the U.S. Constitution by failing to provide him fair notice of conduct that would subject him to sanctions under the Kingpin Act. Specifically, Defendants sanctioned Plaintiff for purportedly engaging in conduct that was not sanctionable at the time of its alleged undertaking, an action that "fail[ed] to provide [Plaintiff] fair notice of what is prohibited" and effectively barred Plaintiff from

"know[ing] what is required of [him] so that [he] may act accordingly." *Fox Television Stations, Inc.*, 567 U.S. at 253 (internal citations omitted).

The matter is straightforward: the Kingpin Act's designation criteria make sanctionable the provision of material assistance, support, or services to or in support of the international narcotics trafficking activities of, or acting for or on behalf of, either a significant foreign narcotics trafficker or a person that is themselves designated for sanctions under the Kingpin Act. The predicate condition for a determination that a person is engaged in sanctionable conduct under 21 U.S.C. § 1904(b)(2) or (3) is that there be a designated person to whom the foreign person is providing material assistance, support, or services, or on whose behalf the foreign person is acting. As a matter of fair notice, foreign persons are on alert that engaging in such conduct involving a person sanctioned pursuant to the Kingpin Act is itself sanctionable and may lead to the punitive consequences outlined in the Kingpin Act.

Plaintiff was not provided fair notice of conduct made sanctionable under the Kingpin Act because his designation is not based on his provision of material assistance, support, or services to the international narcotics trafficking activities of, or his acting for or on behalf of, persons designated pursuant to the Kingpin Act. Instead, El Aissami—the person to whom Plaintiff's designation derives—was only sanctioned at the same time as Plaintiff. Thus, OFAC's allegations with respect to Plaintiff could not serve as a basis to designate Plaintiff pursuant to 21 U.S.C. § 1904(b)(2) or (3) as Plaintiff was not alleged to be providing material assistance, support or services to the international narcotics trafficking activities of, or acting for or on behalf of, El Aissami at a time in which El Aissami was designated pursuant to the Kingpin Act.

Indeed, Plaintiff could not have gone to OFAC's regulations to understand that such purported dealings with El Aissami—having occurred as they allegedly did prior to El Aissami's

designation—could cause Plaintiff to be sanctioned under the Kingpin Act. For him to have such an understanding, he would have to divine that El Aissami would be designated in the future and then elected to continue to engage in sanctionable dealings with him on an ongoing basis at the time of his designation. This would be an absurd reading of the Kingpin Act and the FNKSR. No such divination is necessary here, as the matter is simple: Plaintiff had no actual or constructive notice that the alleged provision of material assistance, support, or services to, or his acting for or on behalf of, El Aissami prior to, and concluding before, El Aissami's designation would serve as grounds for his designation pursuant to the Kingpin Act.

Defendants' action thus defies the clear command of the Fifth Amendment's Due Process Clause that "laws which regulate persons . . . give fair notice of conduct that is forbidden or required." *Karem*, 960 F.3d at 664. There is no way that Plaintiff could have read §§ 1904(b)(2) or (3) of the Kingpin Act to understand that his purported activities involving El Aissami served as grounds for his designation thereunder, just as OFAC provided Plaintiff no opportunity to conform his conduct to the demands of law upon El Aissami's designation. Unable to comprehend the law or comply with its demands, Plaintiff was left exposed to OFAC's arbitrary whims—and outcome for which the fair notice doctrine was erected to protect against. *See Fox Television Stations, Inc.*, 567 U.S. at 253 (noting that the doctrine aids "those enforcing the law [so that they] do not act in an arbitrary or discriminatory way.").

### iii.    Defendants' Arguments Are In Error

Defendants first argue that Plaintiff is a foreign national without substantial contacts to the United States and, thus may not assert constitutional rights. Defs. Mem. at 22-24. Defendants rely heavily on the Supreme Court's rehearsal of the relevant law in *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 140 S.Ct. 2082 (2020), in which the Court stated that "it is long settled

as a matter of American constitutional law that foreign citizens outside U.S. territory do not possess rights under the U.S. Constitution." *Id*. at 2086. But Defendants' misread that case, as well as the general state of the law on when foreign nationals merit constitutional protection. Considering Plaintiff's presence in the United States immediately prior to his designation under the Kingpin Act, as well as his substantial property holdings including residential properties in the United States, there can be no question that Plaintiff meets the threshold by which non-citizens develop substantial contacts to the United States deserving of constitutional protection.

Defendants are at pains to bend the prevailing case law to support their position. Misreading *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990), Defendants argue that non-citizens only receive constitutional protection "when they have come within the territory of the United States and developed substantial connections with this country." Defs. Mem. at 23 (quoting *Verdugo-Urquidez*, 494 U.S. at 271). This, however, is not what the Supreme Court held in *Verdugo-Urquidez*. Rather, the Court, in reviewing the cases cited by Respondent in that matter, noted that "[t]hese cases . . . *establish only* that aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *Id.* at 271 (emphasis added). The government previously advanced this same argument based on this same line from *Verdugo-Urquidez*, which the D.C. Circuit rejected as "misleading." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 202 (D.C. Cir. 2001). It is for this reason, for instance, that the D.C. Circuit in that matter found that "aliens who have entered the territory of the United States and developed connections with this country but not substantial ones [may be] entitled to constitutional protections." *Id*. at 202. *Verdugo-Urquidez* does not limit the ability of foreign nationals to assert constitutional rights, but rather "limits the application" of the precedent cited in that matter to instances where

aliens "have come within the territory of the United States and developed substantial connections . . ." *Id*. As evidenced by *Nat'l Council of Resistance of Iran*, courts have found occasions beyond those in the case precedent predating *Verdugo-Urquidez* under which foreign nationals merit constitutional protection. Nowhere in the prevailing case law have the courts denied a foreign national with such substantial connections to the United States as Plaintiff the protections of the Fifth Amendment's Due Process Clause, particularly when the government's blocking of the foreign national's substantial U.S.-based assets leads to their eventual forfeiture. Am. Compl. ¶¶ 88-111; *see also* U.S. Marshall's Notice of Levy as to Writ of Execution on Blocked Real Property at 325 Leucadendra Dive, Coral Gables, FL, ECF No. 315, *Stansell et al. v. Revolutionary Armed Forces of Colombia*, No. 1:19-cv-20896 (RNS) (S.D. Fla. March 18, 2020).

Even if presence were determined to be a prerequisite to the assertion of constitutional due process, Plaintiff would still meet that test. Plaintiff traveled extensively to the United States, residing with his family in residential property in Coral Gables, Florida; founded a number of U.S. companies employing several U.S. persons, and operated them pursuant to an L-1 visa issued by the United States Department of State mere months before his designation; and created a life for his family in the United States, including by sending his U.S. citizen children to schools in the United States. Am. Compl. ¶¶ 120-121. Further, immediately prior to his designation by OFAC, Plaintiff was physically present in the United States. Am. Compl. ¶ 120. Moreover, the assets blocked by OFAC upon Plaintiff's designation clearly demonstrate Plaintiff's substantial presence in the United States, including various residential properties, various vehicles, vessels, and an aircraft in the U.S. Am. Compl. ¶ 86-87; AR 0035-0043; Am. Compl., Exhibit B.

How Defendants can reasonably proffer the argument that Plaintiff lacks presence in the United States considering the substantial properties blocked by the agency, as well as the

government's own records as to Plaintiff's extensive residence and interests in the United States, is unclear. Even if physical presence in the United States is required for a non-citizen with substantial contacts to the United States to assert a constitutional due process right—a position that the prevailing case law does not support—Plaintiff would nevertheless clearly meet this standard. To hold otherwise would have substantial implications, raising the question as to whether non-citizens lawfully resident in the United States—including, for instance, long-time permanent resident aliens—lose all constitutional protections while traveling abroad.

Defendants next argue that—even if Plaintiff can assert constitutional due process rights under the Fifth Amendment—his claim would still fail for an assortment of reasons. Defs. Mem. at 24. First, Defendants claim that "fair notice does not require that an agency provide advance warning of specific actions it may take; rather, the focus is on whether the agency has provided 'adequate notice of the substance of the rule' being applied." Defs. Mem. at 24-25 (quoting *Howmet Corp. v. EPA*, 614 F.3d 544, 553 (D.C. Cir. 2010)). Here, though, "adequate notice of the substance of the [law]" requires that persons have notice as to who are persons subject to sanctions pursuant to the Kingpin Act. Indeed, OFAC routinely provides "notice" of its designation actions under the Kingpin Act in the Federal Register for this ostensible purpose: to apprise the public of a new rule or interpretation of general applicability. *See, e.g.*, 82 FED. REG. 11101 (Feb. 17, 2017). Absent the public identification of those persons with whom certain dealings could lead to a derivative Kingpin Act designation—such as the one suffered by Plaintiff—OFAC would entirely have failed to apprise the public as to what conduct is regulated by the Kingpin Act. Thus, prior notice of those persons designated as significant foreign narcotics traffickers or otherwise sanctioned under the Kingpin Act is necessary to ensuring that private parties conform their conduct to the demands of law. *See Trinity Broadcasting of Fla., Inc. v.*

*FCC*, 211 F.3d 618, 628 (D.C. Cir. 2000) ("We thus ask whether 'by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify . . . the standards with which the agency expects parties to conform . . . .'").

Unable to reconcile their action with such a basic tenet of law, Defendants proceed to conflate pre-deprivation notice with fair notice, hoping to piggy-back the exceptions to pre-deprivation notice into the fair notice doctrine. Defs. Mem. at 25. Defendants provide no case support for the position that OFAC need not provide fair notice of the content of those laws and regulations that it administers before taking action against private parties. Instead, the sole case cited in apparent support of their position merely reiterates that "[i]n the absence of notice—for example, where the regulation is not sufficiently clear to warn a party about what is expected of it—an agency may not deprive a party of property by imposing civil or criminal liability." *General Elec. Co. v. EPA*, 53 F.3d at 1328.

In the absence of case support, Defendants again attempt to resort to policy arguments by arguing that "[e]xtending the fair notice doctrine [to this case] would defeat the central purpose of the Kingpin Act . . ." Defs. Mem. at 25. To the extent that the Court ruminates over these policy considerations, Defendants fail to identify why fair notice to Plaintiff that dealings involving El Aissami are sanctionable would undermine the Kingpin Act's purpose. Indeed, assuming Plaintiff was dealing with El Aissami at the time of his Kingpin Act (a point he does not concede), had he not been designated simultaneous with El Aissami, he could have chosen to cease any dealings with El Aissami following the latter's Kingpin Act designation. Far from undermining the central purpose of the Kingpin Act, having had the ability to have made that choice would have furthered the Kingpin Act's policy objective of isolating those involved in international narcotics trafficking activities. Thus, to the extent that a policy argument can be made in this case, it is that

Plaintiff's reading of the Kingpin Act is more consistent with the policy espoused by the Kingpin Act than Defendant's interpretation of that statute's spirit.[2]

Defendants next argue that Plaintiff cannot complain of OFAC's simultaneous "designations of narcotics traffickers and their supporters," as OFAC has long taken such action under the Kingpin Act, thereby providing sufficient notice to Plaintiff of its interpretation of the Kingpin Act. Defs. Mem. at 25-29. This, however, is beside the point: Plaintiff's core argument is that OFAC's simultaneous designation of El Aissami and himself violated his due process rights under the Fifth Amendment by failing to provide fair notice of conduct that was sanctionable under the Kingpin Act. Whether OFAC interprets its authority as permitting such simultaneous designation is irrelevant if such designations contradict the fair notice doctrine of the Fifth Amendment's Due Process Clause. That OFAC has unlawfully utilized its authorities in the past does not permit it to deny Plaintiff fair notice in this case nor does it provide OFAC with an affirmative defense to continue to use their authorities in such a manner.

Finally, Defendants argue that any error would remain harmless, as Plaintiff "cannot establish that any error was prejudicial" and "offers no reason to believe that a better understanding of OFAC's interpretation of the Kingpin Act would have led to a change in his relationship with El Aissami . . ." Defs. Mem. at 29. This argument perverts the fair notice doctrine, rendering the aggrieved person whose constitutional rights have been violated with the burden of showing that they would not have violated the law had they known what the law required. Defendants cite no case support for this upending of the fair notice doctrine (although

---

[2] *See e.g.*, Press Release, U.S. Dep't of Treasury, Office of Foreign Assets Control, Treasury Sanctions Gulf Cartel Drug Trafficker Action Targets Mexican Cocaine Trafficker, Abel Briones Ruiz, And His Support Network (May 21, 2015) ("With today's action [under the Kingpin Act], we are able to financially isolate this long-time cocaine trafficker . . . .").

they seek to rely on *Zevallos v. Obama*, 793 F.3d 106 (D.C. Cir. 2015) without warrant). *Zevallos*, however, held only that any harm caused by the government's delay in processing a delisting request was harmless considering the eventual disposition of that request. That holding is clearly inapplicable to the facts in this case, which do not relate to what the government eventually did, but rather what the Plaintiff would have done had he been provided with fair notice.

   **B.     Defendants' Failure to Provide Adequate Notice of the Reasons for Plaintiff's Designation Violates Plaintiff's Due Process Rights**

         i.     Due Process Requires Defendants to Provide Adequate Notice of the Reasons for Plaintiff's Designation Under the Kingpin Act

The Due Process Clause of the Fifth Amendment requires that persons be provided notice and a hearing before the government can constitutionally deprive them of a protected interest. *Nat'l Council of Resistance of Iran*, 251 F.3d at 205 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976)). While due process is a "flexible" concept requiring "such procedural protections as the particular situation demands," *Fares v. Smith*, 249 F. Supp. 3d 115, 122 (D.D.C. 2017), *aff. Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) (quoting *Mathews*, 424 U.S. at 334-35), it mandates that persons are afforded a meaningful opportunity to be heard. *Mathews*, 424 U.S. at 333.

The D.C. Circuit has "countenanced" an approach by which due process requires the mere disclosure of the unclassified portions of the administrative record "in very limited, statutorily recognized circumstances . . ." *Fares*, 901 F.3d at 319. Moreover, the D.C. Circuit has noted that, even "in [this] narrow category of cases," other procedural safeguards may be required to provide meaningful protections of due process. *Id*. For instance, courts may authorize "strictly necessary adaptations of ordinary administrative and judicial process" to ensure that a designated person is provided adequate notice of the reasons for their designation. *Id*. at 324. This includes requiring the government to provide designated persons "with sufficiently specific 'unclassified summaries

. . . that provide [designees] with the 'who,' 'what,' 'when,' and 'where' of the allegations'" that have been withheld from disclosure. *Id.* (quoting *Kiaraldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)); *see also Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014) (stating that where the classified record is essential to supporting OFAC's determination, the government may be required to make disclosures that provide the designee with "a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence.").

Because OFAC has such alternative means by which to disclose the reasons for a person's designation without compromising national security interests, courts have frowned on the partial disclosure of the factual bases for a designation. *See Fares*, 901 F.3d at 322 ("[D]isclosure of some but not all of the allegations against [a designee] impairs their ability to fully clear their names for delisting . . ."). For instance, the Ninth Circuit held that—where OFAC disclosed "only one of three reasons for its investigation and designation"—"incomplete notice [did] not meet the requirements of due process." *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 986 (9th Cir. 2012). The reason is clear: due process requires that designated persons have an opportunity to present evidence to rebut the allegations in the administrative record or otherwise negate the determination that they meet the legal criteria for designation. *Nat'l Council of Resistance of Iran*, 251 F.3d at 209. This necessarily demands that designated persons have a full and complete understanding of the reasons for their designation.

        ii.    Defendants' Disclosures Fail to Adequately Apprise Plaintiff of the Reasons for His Designation Consistent with Due Process

Defendants violated Plaintiff's Fifth Amendment due process rights by failing to provide him with adequate notice of the reasons for his designation under the Kingpin Act. This has had the effect of inhibiting Plaintiff from challenging his designation through the delisting procedures set forth by OFAC, as—absent a basic understanding of the reasons for his designation and the

evidence used by Defendants to maintain it—Plaintiff has been left without meaningful opportunity to challenge his designation.

From the beginning, Defendants have provided minimal practical notice of the basis for its action against Plaintiff. Upon his designation, OFAC issued a press release announcing the designation that set forth factual allegations without stating whether these allegations served as the factual basis for its determination that he meets the criteria for designation under the Kingpin Act. Indeed, the purpose of OFAC's press release is not to provide notice to the designated person but rather to provide notice to the public at large of the nature of the designation action and the reasons for taking it. Defendants provided no actual or constructive notice to Plaintiff himself of the reasons for its designation action against him.

Following a request from Plaintiff, Defendants eventually disclosed a heavily-redacted version of the evidentiary memorandum underlying its determination that Plaintiff meets the criteria for designation under the Kingpin Act. AR 0009-0010. While intended to provide notice of the factual and legal basis for its designation decision, OFAC's substantial redactions to the evidentiary memorandum eliminated any opportunity for Plaintiff to meaningfully understand or rebut the basis for OFAC's action against him. In the section of the memorandum setting forth the basis for the designation, OFAC redacted the corresponding material excepting part of a sub-heading ("[redacted] LOPEZ BELLO acting as a financial manager and front man for EL AISSAMI") and two sentences. AR 0025, 0027. The first of those sentences relates to a July 2013 unauthored online publication's characterization of Plaintiff as being "'linked as [a] front m[a]n' for EL AISSAMI," and the second relates the same article's estimation of his net worth. *Id*.

OFAC has disclosed four unclassified summaries of otherwise privileged information contained in the evidentiary memorandum. AR 0656-0658. The first of these unclassified

summaries repeated information that had been disclosed in the initial record provided to Plaintiff. AR 0658 ("Venezuelan national Samark Jose Lopez Bello is the 'frontman' for Tareck El Aissami."). The third and fourth unclassified summaries set forth factual allegations that appear to be sourced from third parties and that have unclear relevance to the legal bases for Plaintiff's designation or the purposes of the Kingpin Act (as there is no apparent relation to narcotics trafficking). *Id*. ("Lopez Bello is identified as the 'business representative,' 'money manager,' and 'money launderer' for El Aissami." "Lopez Bello handles financial matters for El Aissami."). The sole remaining unclassified summary alleges that Plaintiff "is in charge of laundering drug proceeds through Petroleos de Venezuela, S.A. (PDVSA) and organizing the air and maritime cocaine routes to transport cocaine to the Middle East and Asia." *Id*. This factual allegation is conclusory in nature, providing no meaningful opportunity for Plaintiff to offer rebuttal evidence.

OFAC's press release, the heavily-redacted evidentiary memorandum, and the unclassified summaries comprise the totality of the disclosures made to Plaintiff regarding the reasons for his designation. These disclosures fall short of meeting OFAC's due process obligations to provide notice to Plaintiff to provide him a meaningful opportunity to challenge his designation. Considering the substantial redactions to the record disclosed to Plaintiff, Defendants are expected to provide alternative means by which Plaintiff can understand the bases for the designation action. In apparent recognition of this obligation, Defendants disclosed several unclassified summaries of otherwise privileged information set forth in the administrative record. Such unclassified summaries, as the D.C. Circuit has noted, must be "sufficiently specific" in nature, outlining "the 'who,' 'what,' 'when,' and 'where' of the allegations'" that have been withheld from disclosure. *Fares*, 901 F.3d at 324. OFAC's unclassified summaries, however, lack this requisite specificity, denying Plaintiff any real opportunity to present rebuttal evidence.

To the extent that OFAC's disclosures provide Plaintiff with any substantive understanding of reasons for his designation, it is, at best, a partial understanding. Indeed, nowhere does OFAC assert that its unclassified summaries comprise all of the factual bases for its decision to designate Plaintiff pursuant to the Kingpin Act. Such partial disclosure has been frowned on by courts, as incomplete disclosure denies designated persons the ability to meaningfully challenge their designations. *See Fares*, 901 F.3d at 322 ("[D]isclosure of some but not all of the allegations against [a designee] impairs their ability to fully clear their names for delisting . . ."); *see also Al Haramain Islamic Found.*, 686 F.3d at 986 ("[I]ncomplete notice [does] not meet the requirements of due process."). Without an understanding of all the factual bases underlying OFAC's decision to designate him, Plaintiff is in no position to meaningfully challenge his designation through OFAC's administrative delisting procedures, as OFAC could deny any delisting petition on grounds that have not been disclosed to him. Thus partial disclosure negates Plaintiff's due process right to notice and a meaningful opportunity to challenge his designation under the Kingpin Act.

For this reason, Plaintiff remains inhibited, if not barred, from challenging his designation through OFAC's delisting procedures, disabled from showing either that there is an insufficient basis for his designation or from proposing remedial measures which, if adopted, would negate the basis of his designation. Defendants have thus deprived Plaintiff of his Fifth Amendment right to due process, blocked his assets in the U.S., upended his life in the U.S., and turned him into an international pariah without affording him actual or constructive notice of the basis for his designation or any real opportunity to challenge it.

       iii.    Defendants Fail to Comprehend the Scope of Their Notice Obligations Under the Due Process Clause

Defendants first repeat their argument that Plaintiff has no standing to assert a constitutional due process right. Defs. Mem. at 39. For those reasons described above, *supra* 27-

30, Defendants' argument is without merit, as Plaintiff clearly has standing to assert a constitutional due process right given his ongoing presence in the U.S. immediately prior to his designation, and his substantial properties in the U.S.

Defendants next argue that OFAC "provided Plaintiff with sufficient notice of the agency's fact-findings underlying its designation decision" through its release of the redacted administrative record, press release, press chart, Federal Register notice, and unclassified and non-privileged summaries of otherwise protected information. Defs. Mem. at 40. The argument defies reason. According to Defendants, for instance, the "redacted administrative record…apprise[s] Plaintiff of the specific findings that support OFAC's conclusion," pointing to a single paragraph in which OFAC cites anonymous online reporting alleging Plaintiff "is a key frontman for El Aissami..." Defs. Mem. at 40. Such partial disclosure does not suffice for due process purposes, as explained above. *See Fares*, 901 F.3d at 322; *see also Al Haramain Islamic Found.*, 686 F.3d at 986. For Defendants to suggest that disclosure of a single OFAC finding relating to the basis for Plaintiff's designation provides him with sufficient notice to meaningfully challenge his designation evidences its disregard for its due process obligations. *See* Defs. Mem. at 40 ("[T]his information provides a clear path for Plaintiff to challenge his designation through the process afforded to him under OFAC's regulations."). For, as Defendants themselves note, "due process mandates . . . that OFAC provide [] [P]laintiff with 'a basis from which to understand his designation, and thereby offer rebuttal arguments and evidence in response.'" Defs. Mem. at 39-40 (quoting *Zevallos v. Obama*, 10 F. Supp. 3d 111, 131 (D.D.C. 2014)). Here, the redactions to the evidentiary memorandum provide no basis from which Plaintiff may understand his designation, and no opportunity to submit rebuttal arguments and evidence to those findings that remain undisclosed to him.

Defendants then argue that OFAC's provision of unclassified summaries to Plaintiff "more than satisfies due process," again because these summaries purportedly "apprise[] [him] of the government's view regarding the basis for [his] designation[], and as such, can meaningfully 'proffer rebuttal evidence and arguments to OFAC to contest [his] designation[].'" Defs. Mem. at 41. But closer review of OFAC's unclassified summaries belies Defendants' claim. As discussed above, these summaries largely reiterate the disclosed portion of the evidentiary memorandum or have unclear relevance to the legal criteria for designation under the Kingpin Act. Moreover, OFAC provides no indication as to whether the factual allegations set forth in the unclassified summaries comprise the totality of OFAC's factual findings in support of its designation decision. Despite provision of unclassified summaries, Plaintiff remains in no position to successfully contest his designation via OFAC's administrative delisting procedures, as he continues to lack an adequate understanding of the basis for his designation and is thus disabled from submitting rebuttal arguments and evidence to the agency.

Defendants further claim that OFAC has no obligation to provide "sufficiently specific unclassified summaries" to apprise Plaintiff of the reasons for his designation, contending that Plaintiff's claim otherwise is "legally deficient." Defs. Mem. at 42. In support of its position, Defendants cite to *FBME Bank Ltd. v. Lew*, 125 F. Supp. 3d 109 (D.D.C. 2015), which itself quotes and relies on the Ninth Circuit's ruling in *Al Haramain Islamic Found. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012). But in *Al Haramain Islamic Found.*, the Ninth Circuit additionally noted that "[w]ithout knowledge of a charge, even simple factual errors may go uncorrected despite potentially easy, ready, and persuasive explanations." *Al Haramain Islamic Found.*, 686 F.3d at 983. Moreover, Defendants ignore the D.C. Circuit's opinion in *Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018) where the Court stated that while "due process require[s] the disclosure of *only* the

unclassified portions of the administrative record," the "consequence" is that "in lieu of classified evidence," OFAC may be required to "provide designees with sufficiently specific 'unclassified summaries" providing "the 'who,' 'what,' 'when,' and 'where' of the allegations." *Fares*, 901 F.3d at 324. Defendants' failure to acknowledge this obligation evidences its due process error.

Finally, Defendants argue that "any error associated with the notice provided by OFAC would be harmless," as Plaintiff "is unable to demonstrate that such error 'would have affected the outcome' of OFAC's decision-making process." Defs. Mem. at 42-43 (quoting *Zevallos*, 10 F. Supp. 3d at 132). But the harm caused by OFAC's failure to provide adequate notice of the basis for his designation is ongoing in nature, barring Plaintiff from utilizing OFAC's administrative delisting procedures to meaningfully contest his designation. By finding in favor of Plaintiff and requiring OFAC to provide sufficient notice to Plaintiff, the Court would "affect[] the outcome of OFAC's decision-making process." This is because Plaintiff would have a meaningful opportunity to submit rebuttal arguments and evidence to OFAC's factual findings in support of the designation, which necessarily would impact OFAC's review of Plaintiff's delisting petition. Accepting Defendants' position would altogether bar Plaintiff (or any other designee) from ever vindicating their constitutional due process interests, regarding any due process error as "harmless" in light of the fact of the person's designation by OFAC.

IV.   **OFAC'S BLOCKING ACTION CONSTITUTES AN UNREASONABLE SEIZURE OF PLAINTIFF'S PROPERTY IN VIOLATION OF THE FOURTH AMENDMENT**

A.   **Defendants Have Unreasonably Seized Plaintiff's Assets in Violation of the His Rights Under the Fourth Amendment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. CONST., Amend. IV; *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017). Under the Fourth Amendment, "a 'seizure' of property . . . occurs

when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cty.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

By imposing sanctions on Plaintiff, including blocking all property in which he has an interest that is or comes within the United States or the possession or control of a U.S. person, OFAC effected a seizure of Plaintiff's property, one that triggered the protections of the Fourth Amendment. Through the blocking of Plaintiff's property, including residential property, OFAC made it unlawful for Plaintiff or any other person to transfer, pay, export, withdraw, or deal in such property. 31 C.F.R. § 598.202(a). This blocking action had an obvious "meaningful interference" in Plaintiff's possessory interests in his property located in the United States, making it unlawful for him and his family to continue residing in U.S.-based property (e.g., 325 Leucadendra Drive) and barring his U.S. businesses from maintaining their operations. Considering that OFAC did not seek warrant for its blocking order, its seizure of Plaintiff's properties was unreasonable within the meaning of the Fourth Amendment. *See United States v. Place*, 462 U.S. 696, 701 (1983) (noting that the Supreme Court "has viewed a seizure of personal property as *per se* unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause . . .").

> **B.**     **Defendants' Arguments In Support of Their Failure to Abide by the Fourth Amendment's Warrant Requirement are Unavailing**

Defendants argue that Plaintiff cannot assert the protections of the Fourth Amendment; that OFAC's blocking action does not constitute a "seizure" within the meaning of the Fourth Amendment; and that—if it did constitute a seizure—OFAC's seizure was not unreasonable. Defs. Mem. at 29-39. Defendants err on all counts.

41

First, Defendants claim that Plaintiff cannot lawfully assert the protections of the Fourth Amendment, as "the Fourth Amendment offers no protection to foreign nationals living outside the United States," Defs. Mem. at 30. According to Defendants, "[t]he Fourth Amendment . . . protects a much narrower class of individuals than the Fifth Amendment." *Id*. (quoting *United States v. Barona*, 56 F.3d 1087, 1093 (9th Cir. 1995)). But Defendants themselves acknowledge that the constitutional analysis is largely the same as that determining whether Plaintiff can fairly assert a Fifth Amendment due process right—*Verdugo-Urquidez* and its progeny being the guide. Defs. Mem. at 30. As explained above, *see supra* 27-30, Plaintiff clearly has the requisite substantial connections to the United States to merit constitutional protection, whether under the Fourth or Fifth Amendments to the Constitution. At the time of his designation, Plaintiff and his family maintained physical residence in the United States, carrying on all the indicia of family life in the United States, and Plaintiff maintained substantial assets in the United States, including multiple U.S. companies under his ownership and control. *See, e.g.*, Am. Compl., ¶¶ 86-121.

Nothing cited by Defendants requires Plaintiff to make a greater showing. Unlike those portions of *Verdugo-Urquidez* quoted by Defendants, Plaintiff is not seeking to apply the Fourth Amendment to the activities of the United States directed against aliens in foreign territory or in international waters. Defs. Mem. at 30. Instead, Plaintiff's claim relates to OFAC's action against his properties in the United States, including his family residence, personal goods, and business operations. Moreover, Defendants' argument that Plaintiff lacks "territorial presence" in the United States is at odds with its knowledge of Plaintiff's travels to, and residence in, the United States in the weeks immediately preceding his designation under the Kingpin Act. *See* Am. Compl., ¶ 120-121; Am. Compl., Exhibit B. Defendants may claim Plaintiff's "existing connections to the United States consist merely of financial interests," but that argument is belied

by the Plaintiff's Amended Complaint, which asserts his and his family's residence in the United States and the indicia of their family life in the United States. Am. Compl., ¶ 120-121.

Second, Defendants argue that OFAC's blocking order did not result in a "seizure" within the meaning of the Fourth Amendment because (1) the Fourth Amendment was not intended to restrict the Executive's authority with respect to international matters; and (2) there has been no "meaningful interference" with Plaintiff's "possessory interests" in his properties. Defs. Mem. at 32-24, 34-35. Defendants' first argument is beside the point. OFAC issued a blocking order that expressly imposed a block on properties in the United States in which Plaintiff maintained an ownership interest, including residential property where Plaintiff and his family had been residing. Am. Compl., ¶¶ 86-112, 121. As evident by OFAC's evidentiary memoranda, OFAC's blocking order was intended to target properties in the United States in which Plaintiff held an ownership interest. Thus, OFAC's order was domestic in character, particularly considering the agency's knowledge and awareness of Plaintiff's presence and his substantial assets in the United States. There is no support for OFAC's argument that a blocking action with knowing and intentional domestic consequences can escape Fourth Amendment scrutiny due to the international nature of the designation which led to the blocking action.

Defendants' second argument also fails: OFAC's blocking action interferes, in a meaningful manner, with Plaintiff's possessory interests in his properties, as he is unable to exercise any right with respect to such properties without exposing himself to criminal liability. In contrast to Defendants' claim, the D.C. Circuit has remained agnostic over whether an OFAC blocking constitutes a "seizure" within the meaning of the Fourth Amendment. *See, e.g., Kadi*, 42 F. Supp. 3d at 37  (refusing to decide whether OFAC blocking order categorically fall within one of the exceptions to the Fourth Amendment and noting that the D.C. Circuit "has expressed some

reluctance to find that, categorically, blocking orders could *never* be 'seizures' under the Fourth Amendment."). Other courts, however, have confirmed what is clear in this case: OFAC's blocking action erodes Plaintiff's possessory interests in his U.S.-based properties, including his residential property, rendering the blocking order a "seizure" within the meaning of the Fourth Amendment. *See Al Haramain Islamic Found.*, 686 F.3d at 994 n.17; *KindHearts for Charitable Humanitarian Dev. v. Geithner*, 647 F. Supp. 2d 857, 870 (N.D. Ohio 2009). While Defendants argue that OFAC "does not take title to, possess, or move [blocked property]," the law is clear: OFAC need not take title to, or possession of, property to "seize" it within the meaning of the Fourth Amendment, as any meaningful interference with Plaintiff's possessory interests in the property triggers Fourth Amendment scrutiny. *See Illinois v. McArthur*, 531 U.S. 326, 330-331 (2001) (applying Fourth Amendment scrutiny to officers' prevention of an individual from re-entering home while officers sought to obtain a warrant to search the home); *Soldal*, 506 U.S. at 61.

Finally, Defendants argue that—if the blocking order did constitute a "seizure"—the seizure was reasonable for several reasons: (1) OFAC's designation of Plaintiff is supported by substantial evidence; (2) OFAC blocking orders "are *per se* reasonable"; (3) OFAC's blocking order here "falls within the special needs exception to the Fourth Amendment; and (4) a weighing of the party's respective interests indicates that a warrant was not required in this instance. Defs. Mem. at 35-38. On all grounds, though, Defendants are in error.

For the reasons described above, *supra* 11-15, OFAC's designation of Plaintiff constitutes arbitrary and capricious agency action in violation of the APA and is thus not supported by substantial evidence. Defendants provide no direct case support that OFAC blocking orders "are *per se* reasonable," despite OFAC blocking orders having faced Fourth Amendment scrutiny by several courts, including those in this circuit. *See, e.g.*, *Islamic Am. Relief Agency v. Unidentified*

*FBI Agents*, 394 F. Supp. 2d 34 (D.D.C. 2005); *Holy Land Found. for Relief and Dev.*, 219 F.

Supp. 2d 57 (D.D.C. 2002); *Al Haramain Islamic Found., Inc.*, 686 F.3d 965 (9th Cir. 2012);

*KindHearts for Charitable Humanitarian Dev.*, 647 F. Supp. 2d 857 (N.D. Ohio 2009).

Defendants' recourse to the "special needs exception" to the Fourth Amendment is similarly

unavailing, as it requires a weighing of the party's respective interests. *See Bd. of Educ. v. Earls*,

536 U.S. 822, 830-34 (2002). Here, Plaintiff's interest in remaining free of OFAC's blocking order

is substantial for reasons made evident in *Al Haramain Islamic Found., Inc.*, 686 F.3d at 992

(stating that "there is no limited scope or scale to the effect of [a] blocking order . . . The only limit

[being temporal], and that limitation is quite small."). OFAC's blocking order has caused

substantial deprivation to Plaintiff, causing him to be unable to maintain his and his family's

residence in the United States and Plaintiff's continued operation of his U.S. business ventures.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment;

deny Defendants' motion to dismiss or, in the alternative, for summary judgment; and enter

judgment in favor of Plaintiff on all claims.


Dated: December 3, 2021                              Respectfully submitted,

                                                     s/Erich C. Ferrari
                                                     ERICH C. FERRARI
                                                     Ferrari & Associates, P.C.
                                                     1455 Pennsylvania Ave. NW
                                                     Suite 400
                                                     Washington, D.C. 20004
                                                     (202) 280-6370
                                                     ferrari@falawpc.com

                                                     *Counsel for Plaintiff*