# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SAMARK JOSE LÓPEZ BELLO | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Civil Action No. 1:21-01727 (RBW) |
| v. | ) | |
| | ) | |
| BRADLEY T. SMITH, in his official | ) | |
| Capacity as Acting Director, Office of | ) | |
| Foreign Assets Control, *et al*. | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

## <u>INTRODUCTION</u>

It has long been held as "fundamental" that the powers of Congress and the Executive to conduct this nation's foreign relations remain "subject to the constitutional requirements of due process." *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 164 (1963). More than a half-century ago, the Supreme Court underscored that:

> The imperative necessity for safeguarding [] rights to procedural due process under the gravest of emergencies has existed throughout our constitutional history, for it is then, under the pressing exigencies of crisis, that there is the greatest temptation to dispense with fundamental constitutional guarantees which, it is feared, will inhibit government action.

*Kennedy*, 372 U.S. at 165.

By the actions taken against Plaintiff and in their arguments before this Court, Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Acting Director Bradley T. Smith, in his official capacity, fail to appreciate, much less uphold, this fundamental attribute of American law. Instead, Defendants have acted beyond the scope of their statutory authorities under the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. § 1901 et seq., and flouted the due process protections afforded Plaintiff. Indeed, rather than provide Plaintiff with fair notice as to the requirements of the legal authorities they administer, Defendants imposed sanctions on Plaintiff for alleged conduct that was not sanctionable at the time of its purported engagement. Further, rather than provide Plaintiff with sufficient notice to challenge OFAC's unlawful action, Defendants withhold nearly all substantive portions of the administrative record underlying his designation. Instead, Defendants provide four unclassified

summaries consisting of conclusory allegations.[1] The consequence has been the complete eradication of Plaintiff's properties, business interests, and family life in the United States.

Defending its actions in the instant litigation, Defendants compound their error. Under Defendants' theory of the case, the Kingpin Act says what Defendants say it says, irrespective of what a plain reading of the statutory language otherwise commands. *See* Defs. Consolidation Opp. to Pl.'s Cross-Mot. for Summ. J. and Reply in Support of Defs. Mot. to Dismiss or, In the Alternative, for Summ. J. ("Defs. Mem.") at 11-12. It is Defendants' position that the Kingpin Act authorizes them to impose economic sanctions without first providing fair notice as to the requirements of law or, subsequently, allowing the sanctioned person to understand the basis for the government's action against them. Defs. Mem. at 21-27, 30-35.

Indeed, Defendants appear to assert that their statutory authorities under the Kingpin Act necessarily have superior claim to the due process protections afforded Plaintiff. In Defendants' view, even those cornerstones of American jurisprudence—fair notice and due process—cannot limit, much less override, the statutory interpretations and policy prerogatives that they seek to advance. *See* Defs. Mem. at 24-27. For example, rather than argue how the challenged action is consistent with constitutional due process, Defendants instead seek to deny Plaintiff any claim to such due process protections, then later claim that due process protections must give way to Defendants' statutory interpretations and policy prerogatives. Defs. Mem. at 21-27. According to Defendants, their action against Plaintiff is fully consistent with how they have employed sanctions

---

[1] Although the Defendants filed a declaration with their reply noting Plaintiff's prior use of OFAC's administrative delisting procedures, 31 C.F.R. § 501.807, to seek a rescission of his designation, Plaintiff had not raised that matter previously as it occurred outside of the record in, and is irrelevant to, the instant matter. Plaintiff notes, however, that it was due to the insufficient process and notice he was afforded that he did not believe he had a meaningful opportunity to respond to his designation through that administrative process, and thus elected to pursue litigation.

in the past, but never address that their past practice in this regard has gone unchallenged and may have been outside of the bounds of OFAC's authority and undertaken in a manner that violated constitutional due process. Pl.'s Mem. in Support of Cross-Mot. for Summ. J. and in Opp. to Defs. Mot. for Summ. J. or, in the Alternative, Mot. to Dismiss ("Pl.'s Opp.") at 32.

Neither Defendants' actions nor its arguments are altogether surprising; as the Supreme Court noted above, the "temptation to dispense with fundamental constitutional guarantees" is to be expected when amidst an interminable state of national emergency. *Kennedy*, 372 U.S. at 165. But this Court must not grant its imprimatur to such temptation, lest the careful balance struck in our jurisprudence be upset and the fundamental protections of due process be discarded in in pursuit of policy.

Here, Plaintiff's entire life in the United States has been upturned irreparably: his residence has been executed upon, his business interests have collapsed, his properties seized, and his own person the subject of criminal charges stemming directly from Defendants' challenged action. *See* Am. Compl., ¶¶ ¶¶ 85-112, 120-121. He has suffered these consequences because of Defendants' failure to observe the limits of their statutory authorities under the Kingpin Act and the requirements of due process. This latter failure has, in turn, inhibited Plaintiff from mitigating these harms and rebutting the factual basis for OFAC's action. Only this Court can restore to Plaintiff the protection of constitutional due process and reinstitute the statutory limits of Defendants' authorities under the Kingpin Act.

I.    **Defendants' Designation of Plaintiff Under the Kingpin Act Violates the APA, and Defendants' Arguments to the Contrary are Without Merit**

A.    *The Evidentiary Record Does Not Reasonably Support a Finding that Plaintiff Meets the Criteria for Designation Under the Kingpin Act*

With respect to Plaintiff's claims under the Administrative Procedure Act ("APA), Defendants argue that OFAC's determination that Plaintiff meets the criteria for designation under the Kingpin Act "is supported by substantial evidence" and "is entitled to substantial deference." Defs. Mem. at 4. According to Defendants, "[t]he unclassified and non-privileged record is replete with reporting that confirms the information" in the sole disclosed newspaper article relied upon by OFAC in the administrative record.[2] *Id*.

As Plaintiff noted in his cross-motion, however, OFAC entirely failed to assess the credibility of the reporting relied upon to sustain its designation of Plaintiff, and now Defendants have revealed that most, if not all, of the evidentiary support for the designation is contained in other "reporting." Defs. Mem. at 4. This suggests that OFAC did not assess the credibility of the media reporting it relied and leaves open the possibility that the agency instead cherry-picked reporting, including from disreputable sources, to ensure the desired outcome. *See James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (noting that an agency's deliberate or negligent exclusion of documents that may have been adverse to its decision constitutes error).

To preempt the matter, Defendants contend that "no court has ever held that OFAC is required to expressly assess the credibility of each source it considers . . ." Defs. Mem. at 5. Instead,

---

[2] To the extent that Defendants' claim here is true, it underscores the substantial due process concerns inherent in this case, where almost of the allegations and supporting evidentiary material are withheld from disclosure and yet serve as the basis for the continued imposition of sanctions against Plaintiff. Plaintiff is in no position to assess the credibility of OFAC's claim or offer rebuttal evidence to whatever factual bases and evidentiary material is being relied upon to sustain Plaintiff's Kingpin Act designation.

according to Defendants, "the salient question is whether 'the record reflects substantial evidence of' the basis for designation." *Id*. (citation omitted). In doing so, Defendants dispute the relevance of the D.C. Circuit's opinion in *New Orleans v. SEC*, 969 F.2d 1163 (D.C. Cir. 1992), where the court held that "an agency's reliance on a report or study without ascertaining the accuracy of the data contained in the study or the methodology used to collect the data 'is arbitrary agency action, and the findings based [such a] study are unsupported by substantial evidence.'" *Id*. at 1167-68. Defendants appear to argue that—because *New Orleans* involved an agency's "failure to make statutorily required findings," the D.C. Circuit brought special scrutiny to bear on the agency's decision. Defs. Mem. at 7. According to Defendants, "[n]o similar cost-benefit finding or report is at issue here, nor is there any basis for Plaintiff's assertion that the *Reportero 24* article is 'a central piece of evidence' that warrants special, in-depth treatment." *Id*. But considering the substantial harm caused by Defendants' action against Plaintiff and the irreparable nature of it, more—not less—scrutiny should be brought to bear on the kinds of media reporting, and how such reporting is utilized, to justify a designation decision. Here, where a man's livelihood is at stake, OFAC must "ascertain[] the accuracy" of the information contained in a media report before relying upon such reporting to support its designation action. *New Orleans v. SEC*, 969 F.2d at 1167-68. Moreover, Defendants elide the fact that the statute at issue in *New Orleans* did not contain an express requirement for the agency in that case to make credibility determinations on sources used to support the "statutorily required findings" in connection with actions taken pursuant to that statute. Thus, it cannot be said that the requirement to assess credibility of the sources was required by the statute at issue in New Orleans, and not that at issue here.

Further, the cases that Defendants cite to support this position are misplaced. This is because they do not discuss whether OFAC must make credibility assessments of open-source

reporting, but rather whether OFAC's assessment of the credibility of the party challenging their designation could be used to deny their petition for removal of that designation. *See, e.g.*, *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (2007); *Joumaa v. Mnuchin*, No. CV 17-2780 (TJK), 2019 WL 1559453, at *7 (D.D.C. Apr. 10, 2019) *aff'd*, 798 F. App'x 667 (D.C. Cir. 2020). Likewise, Defendants' argument that "*New Orleans* did not arise in the national security and foreign policy context, where courts must defer to the Executive Branch's collection of evidence" is similarly misplaced. Defs.' Reply Brief at 7 (*see* citing to *Holder v. Humanitarian Law Project*, 561 U.S. 1, 34-35 (2010)). The full sentence in *Holder* cited by Defendants reads, "[b]ut when it comes to collecting evidence *and drawing factual inferences* in this area, the lack of competence on the part of the courts is marked, . . . and respect for the Government's conclusions is appropriate." *Id.* (internal citations omitted) (emphasis added). Thus, while courts are deferential to the conclusions the agencies make from the evidence in their possession, that deference does not necessarily extent to the agencies' collection of that evidence.

Defendants further respond that the D.C. Circuit has nevertheless held that OFAC may "rely on unverified open source materials like news media reports to justify designation decisions under the Kingpin Act," *Zevallos v. Obama*, 793 F.3d 106, 112-13 (D.C. Cir. 2015). Yet, the D.C. Circuit's holding was stated that in the context that it "ha[s] approved the use of such materials *as part of the unclassified record* supporting the decision to designate an individual or entity . . ." *Id.* The reason, according to the D.C. Circuit, is that "Treasury may face logistical or political difficulties obtaining judicial or law enforcement records from other countries," "[d]iplomatic concerns limits what Treasury or its agents can say publicly in connection with individual designations," and "the safety of investigators or informants might be put at hazard were their testimony made available as part of the administrative record." *Id*. In other words, the accuracy of

such "unverified open source materials" should be established by other evidence in OFAC's possession, even if such evidence cannot be included in the unclassified administrative record. In this case, there is no indication that OFAC has corroborated the information contained in media reporting through alternative sourcing found elsewhere in the record.

> B.    *Defendants' Interpretation of, and Use of Its Authorities Under, the Kingpin Act is Contrary to a Plain Reading of the Kingpin Act's Statutory Text and Its Legislative History*

Defendants next contest Plaintiff's claim that, by derivatively designating him as part of the same action targeting El Aissami, OFAC acted both arbitrarily and capriciously in violation of the APA and in excess of its statutory authorities under the Kingpin Act. Defendants, quoting directly from § 1904(b)(2) and (3) of the Kingpin Act, argue that "the statute does not limit OFAC to reliance only on conduct that took place after the designation of the Kingpin Act." Defs. Mem. at 12. According to Defendants, "OFAC's designation of El Aissami permitted the agency also to designate his frontman Plaintiff, simultaneously . . ., even though El Aissami was not formally declared a SDNT at the time of the reporting relied on by OFAC." *Id*.

To support its argument, Defendants appeal to the Kingpin Act's legislative history by claiming that OFAC's reading "is consistent with the history of the statutory language at issue." Defs. Mem. at 12. Defendants' review of the Kingpin Act's history is unnecessary, however. This is because the Act's statutory text plainly requires that—for a foreign person to engage in conduct made sanctionable under § 1904(b)(2) or (3) of the Kingpin Act—it must be performed for or on behalf of, or for the benefit of, a person subject to sanctions under the Kingpin Act. *See, e.g.*, 21 U.S.C. § 1904(b)(3) (authorizing the Secretary of the Treasury to impose sanctions on foreign persons determined to be "owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker so identified in the report required under subsection (b) or

(h)(1) of section 1903 of this title, or foreign persons designated by the Secretary of the Treasury pursuant to this subsection[.]").

If Congress authorized simultaneous designation of drug traffickers and those supporting them, it would have drafted very different language such as, for example, authorizing sanctions on foreign persons determined to be owned, controlled, or directed by, or acting for or on behalf of, persons engaged in international narcotics trafficking. *See* Pl.'s Opp. at 20. It did not do so, however, and Defendants cannot argue otherwise. The plain language of the Kingpin Act simply does not permit an interpretation that a foreign person is providing support to, or acting for or on behalf of, a person that is not identified in the requisite reports to Congress nor otherwise designated under the Kingpin Act at the time of such purported conduct.

Nonetheless, Defendants persist in resorting to the Kingpin Act's legislative history, statutory purpose, and past practice to justify their action. *See* Defs. Mem. at 12-21. None of their arguments are convincing, much less enough to override the plain language of the Kingpin Act. First, with respect to the legislative history, the House report cited by Defendants is entirely consistent with Plaintiff's plain reading of the Kingpin Act. Indeed, noting that the Kingpin Act is styled after "the Colombia IEEPA-SDNT executive order," it imposes sanctions on "foreign firms or individuals that 'materially assist in or provide financial or technological support for or goods or services in support of, the narcotics trafficking activities' of the *named* drug kingpins or *other, already designated* SDNTs." H.R. Rep. No. 106-457 at 46 (emphasis added). According to the House report, "[i]n implementing the Colombia IEEPA-SDNT program, OFAC analysts identify and research foreign targets that can be linked by evidence to individuals or entities *already designated* pursuant to E.O. 12978." *Id*. at 47 (emphasis added). To the extent that there existed any doubt as to the meaning of the Kingpin Act's statutory language, the House report's repeated

insistence that the Kingpin Act—being styled after E.O. 12978—provides authority for OFAC to target persons who provide support to, or are otherwise linked to, "already-designated" SDNTs should resolve the issue altogether. *Id*. Nowhere in the House report is there any indication that Congress intended for the type of simultaneous designation of narcotics traffickers and their supporters undertaken in this case. Indeed, the legislative history provides resounding support for Plaintiff's reading of the Kingpin Act.

Defendants then argue that Plaintiff's reading "cannot be reconciled with the express purpose of the Kingpin Act." Defs. Mem. at 14. Specifically, Defendants state that "noticeably absent from the legislative history is any indication that Congress would categorically prefer the Executive Branch to designate a kingpin and then wait some unspecified amount of time and see if his money launderers, distributors, or foot soldiers continue to support him once a formal SDNT designation has been made." *Id*. However, as evident from the House report cited above, there is clear indication that Congress sought to require OFAC to first designate persons involved in international narcotics trafficking before targeting such persons' supporters. The House report's statement that the Kingpin Act authorizes sanctions on "foreign firms or individuals that 'materially assist in or provide financial or technological support for or goods or services in support of, the narcotics trafficking activities' of the *named* drug kingpins or *other, already designated* SDNTs" cannot be read any other way. H.R. Rep. No. 106-457 at 46 (emphasis added). Thus, contrary to Defendants' position, the Kingpin Act evidences a carefully crafted statutory scheme that provides substantial authorities to the Secretary of the Treasury, while tailoring those

authorities to ensure that persons "who are not knowingly and willfully engaged in international narcotics trafficking" are not subject to sanctions.[3] H.R. Rep. No. 106-457 at 42.

Further, Defendants cite to *United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1352 (D.C. Cir. 2002) as support that "the court must avoid an interpretation that undermines congressional purpose considered as a whole when alternative interpretations consistent with the legislative purpose are available." (citation omitted). This quote, however, was made in the context of interpreting ambiguous statutory language—unlike in the present case in which the statutory language is clear. *Id.* at 1348-52. As noted throughout, the Kingpin Act's express language provides authority to designate persons that provide material assistance, support, and services to the international narcotics trafficking activities of, or that act for or on behalf of, *persons designated under the Kingpin Act*. This language was chosen by Congress itself to further the Kingpin Act's policy objectives, not undermine those objectives.

Defendants' final argument in this regard is that because OFAC has made simultaneous designations of drug kingpins and their supporters in the past without disturbance, it has set a precedent that is to be followed in this matter as well. Defs. Mem. at 16-21. According to Defendants, "OFAC reports on its Kingpin Act designations every year to Congress," and "if Congress thought there were constitutional or statutory problems with the ways the agency was implementing the statute, presumably it would have said." Defs. Mem. at 20. Defendants rely on the Supreme Court's finding in *Dames & Moore v. Regan*, 453 U.S. 654, 680-81 (1981) that "congressional acquiescence" to the Executive's "longstanding practice" may signal its agreement with Executive action. Defs. Mem. at 20-21. But Defendants elide that "congressional

---

[3] While the House report directs this line to "Americans," the term "foreign person," as defined by the Kingpin Act, may include U.S. citizens, permanent resident aliens, or others with lawful presence in the United States. *See* 21 U.S.C. § 1907(2).

acquiescence" to Executive conduct is only relevant "where there is no contrary indication of legislative intent . . .," which—as the preceding discussion evidence—there is plenty of in the case of the Kingpin Act. *Dames & Moore*, 453 U.S. at 678-9. Accordingly, Defendants' attempt to establish a controlling precedent based on their own past practices is unavailing.

## II.     Defendants Fail to Excuse the Lack of Fair Notice Accorded Plaintiff as to Conduct that Could Be Sanctionable Under the Kingpin Act

Defendants argue that Plaintiff's fair notice claim must fail because (1) the "vestiges of Plaintiff's presence within the United States are insufficient to confer constitutional protection," Defs. Opp. at 21; (2) Plaintiff has "misunderst[ood]" the fair notice doctrine and has "focus[ed] on a particular application of th[e] standard [provided by the Kingpin Act]" rather than "challeng[ing] the standard" itself, Defs. Opp. at 22-23; (3) the fair notice doctrine is not applicable in the context of OFAC's blocking actions "due to asset-flight concerns," Defs. Opp. at 24, and (4) application of the fair notice doctrine to the Kingpin Act "would defeat a central purpose of the statute . . ." Defs. Opp. at 24-25. Each of these arguments are without merit.

First, Defendants contend that Plaintiff cannot lawfully make a fair notice claim under the Fifth Amendment's Due Process Clause because "any vestiges of Plaintiff's presence within the United States are insufficient to confer constitutional protection." Defs. Opp. at 21. According to Defendants, because OFAC's action has deprived Plaintiff of his substantial interests in the United States—including his residence; business interests and properties; personal properties; and other vestiges of his life here—Plaintiff no longer has grounds to claim a constitutional due process right under the Fifth Amendment. Under this theory, the greater the deprivation caused by governmental action, the less likely an individual can make lawful claim to the Fifth Amendment's due process protections. Such an argument constitutes the inversion of constitutional due process where, as commonly expressed in our law, the harm to Plaintiff's interests is to be weighed against the

burden placed on the government by any additional procedural safeguards. *See, e.g.*, *Fares v. Smith*, 901 F.3d 315, 323 (D.C. Cir. 2018) (analyzing whether OFAC's designation was consistent with constitutional due process "under the familiar *Mathews v. Eldridge* balancing test.").

In advancing their argument, Defendants assert that they have "accurately quoted" from *United States v. Verdugo-Urquidez*, 494 U.S. 259 (1990) and *Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) without disputing Plaintiff's explanation of the context in which those quotes are taken. *See* Pl.'s Opp. at 28-29. Defendants likewise fail to dispute Plaintiff's argument that he had an established presence in the United States, as evidenced by the blocking of his residential property and all the other indicia of his life in the United States. *See* Pl.'s Opp. at 27-30; Am. Compl., ¶¶ 85-112, 120-121. Defendants' failure to offer a more substantive rebuttal to Plaintiff's claim to constitutional due process betrays the hollowness of its argument.

Even if Defendants had offered such a rebuttal, however, it would have been unavailing as, Plaintiff qualifies for a narrower protected class of persons—the "people" of the United States— contemplated by the jurisprudence. This is because that term "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Verdugo-Urquidez*, 494 U.S. at 266. Plaintiff's presence in this U.S. at the time of his designation easily demonstrates connections to this country that would establish that he is a part of the community described in *Verdugo-Urquidez*.

Second, Defendants argue that Plaintiff has a "fundamental misunderstanding of the [fair notice] doctrine," as the central "question is whether an agency has provided 'adequate notice of the substance of the rule[,]'" as opposed to the "level[] of specificity" sought by Plaintiff. Defs. Opp. at 22-23. Specifically, Defendant complains about Plaintiff's contention that the Kingpin Act requires Defendant to first publicly identify "those persons with whom certain dealings could lead

to a derivative Kingpin Act designation—such as the one suffered by Plaintiff . . ." Defs. Opp. at 23 (quoting Pl.'s Opp. at 30). According to Defendants, "the Kingpin Act plainly discusses the types of conduct that can lead to designation," and the notice requested by Plaintiff lacks merit. Defs. Opp. at 24.

A central problem with Defendants' argument, however, is that OFAC provides public notice of persons subject to sanctions under the Kingpin Act at the time of their designation, as evident by a review of the Federal Register. *See, e.g.*, 82 FED. REG. 11101 (Feb. 17, 2017). When OFAC designates persons pursuant to any of the sanctions authorities it administers, it publishes a notice in the Federal Register of the designation and its consequences. *Id.* ("On February 13, 2017, OFAC blocked the property and interests in property of the following persons pursuant to section 805(b) of the Kingpin Act and placed them on the SDN List."). These public notices identify the names of those persons blocked under the Kingpin Act, and notify the public that certain dealings with the identified persons are prohibited and/or made sanctionable. OFAC has not identified the legal basis for its decision to publish such public notices, but it appears that it does so pursuant to the Freedom of Information Act ("FOIA"), including the requirements that agencies make available to the public "substantive rules of general applicability . . . and statements of general policy or interpretations of general applicability . . ." 5 U.S.C. § 552(a)(1)(D).

By providing notice of its blocking actions, OFAC provides substance to the designation criteria set forth in the Kingpin Act. For instance, § 1904(b)(2) of the Kingpin Act provides that the Secretary of the Treasury is authorized to impose blocking sanctions on:

> . . . any foreign person . . . materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker so identified in the report required under subsection (b) or (h)(1) of section 1903 of this title, or foreign person designated by the Secretary of the Treasury pursuant to this subsection . . .

This designation criterion only has substantive force if persons are either identified in the report required under § 1903(b) or (h)(1) of the Kingpin Act or are otherwise designated pursuant to § 1904(b) of the Kingpin Act. To underline the point: if no person were identified in the report required by § 1903(b) or (h)(1) of the Kingpin Act or designated pursuant to § 1904(b) of the Kingpin Act, then regulated parties would lack instruction as to what conduct is sanctionable.

Plaintiff is thus not arguing for an undue level of specificity, but rather is contending that—absent El Aissami's prior designation—neither Plaintiff nor any other regulated party could understand that the alleged dealings with El Aissami would be sanctionable under § 1904(b)(2) or (3) of the Kingpin Act. Indeed, Plaintiff merely asserts that fair notice requires Defendants to give content to the designation criteria at 21 U.S.C. § 1904(b)(2) and (3) and provide prior notice as to those persons designated under the Kingpin Act and with whom certain dealings may be sanctionable. This is fully consistent with the fair notice doctrine's demand that agencies provide regulated parties with "adequate notice of the substance of the rule," *Howmet Corp. v. EPA*, 614 F.3d 544, 553 (D.C. Cir. 2010) (citation omitted), allowing them to "identify, with ascertainable certainty, the standards with which the agency expects them to conform . . ." *SNR Wireless LicenseCo, LLC v. FCC*, 868 F.3d 1021, 1043 (D.C. Cir. 2017) (citation omitted).

Defendants finally contend that the fair notice doctrine is not applicable in the context of OFAC's blocking actions "due to asset-flight concerns," Defs. Opp. at 24, and that its application to the Kingpin Act in the manner requested by Plaintiff "would defeat a central purpose of the statute . . ." Defs. Opp. at 24-25. Defendants misunderstand the argument: Plaintiff's fair notice claim would not require OFAC to "provide advance notice of specific blocking actions," but rather would require that OFAC "provide advance notice of what type of conduct is prohibited . . ." Defs. Mem. at 24.  This is to be done by identifying those persons with whom certain dealings are made

sanctionable under the Kingpin Act. *Id*. In the instant matter, Plaintiff is not requesting that he be notified in advance that OFAC intends to impose sanctions on him—only that he be provided prior notice that El Aissami is a person designated under the Kingpin Act. The reason for this has been well-explained: absent prior notice of El Aissami's designation under the Kingpin Act, Plaintiff would not know that the Kingpin Act rendered the alleged dealings with El Aissami sanctionable and thus deprived him of an opportunity conform his conduct to the requirements of U.S. law.

Defendants finally resort to arguing that Plaintiff's application of the fair notice doctrine "would defeat a central purpose of the [Kingpin Act] . . ." Defs. Mem. at 24. Defendants, however, make this argument again on the basis of a flawed understanding of Plaintiff's fair notice claim. According to Defendants, "by Plaintiff's reasoning, OFAC could designate a foreign person for 'playing a significant role in international narcotics trafficking[,], . . . without first notifying the kingpin that the agency viewed his conduct as sanctionable under the statute." Defs. Mem. at 24. That is not Plaintiff's argument at all.

To further explain Plaintiff's argument, it is worth comparing the two designation criteria—that set forth at § 1904(b)(2) and § 1904(b)(4)—to see how § 1904(b)(2) (under which Plaintiff is designated) lacks substantive force absent notice of those persons designated under the Kingpin Act. In contrast to § 1904(b)(2) of the Kingpin Act, § 1904(b)(4) of the Kingpin Act authorizes the Secretary of the Treasury to impose sanctions on "any foreign person . . . playing a significant role in international narcotics trafficking." While the Kingpin Act supplies a definition of the term *narcotics trafficking*, the substantive content of the rule set forth in § 1904(b)(4) of the Kingpin Act is clear: a foreign person may be subject to sanctions under the Kingpin Act if they "play[] a significant role in international narcotics trafficking." The designation criterion's content

is self-contained; it is not reliant on any other action that OFAC may take; and regulated parties have a clear understanding of conduct that could merit the imposition of sanctions pursuant to it.

This is clearly distinct from the designation criteria set forth at § 1904(b)(2) and (3) of the Kingpin Act—under which Plaintiff is designated—which are not self-contained and are instead reliant on the identity of those persons subject to sanctions under the Kingpin Act. Thus, whereas § 1904(b)(4) allows regulated parties to understand that "playing a significant role in international narcotics trafficking" serves as grounds for designation under the Kingpin Act, the designation criteria of § 1904(b)(2) and (3) of the Kingpin Act do not—on their own—provide the requisite content to inform regulated parties how to conform their conduct to the requirements of U.S. law. Instead, those section require a prior designation under the Kingpin Act of a third-party to animate their requirements and inform regulated parties as to what conduct is sanctionable. By his fair notice claim, Plaintiff asks the Court to acknowledge this distinction and require OFAC to provide prior notice of those persons subject to sanctions under the Kingpin Act before making a derivative designation of a person with legitimate claim to constitutional due process protections.

### III.   Defendants Failed to Provide Constitutionally Sufficient Notice of the Reasons for Plaintiff's Designation Under the Kingpin Act

Defendants contend that OFAC provided Plaintiff sufficient notice of the reasons for his designation. In doing so, they argue that Plaintiff cannot assert a constitutional due process right as a foreign national and that, even if he could, OFAC has met its burden through disclosure of the unclassified administrative record as well as "unclassified and non-privileged summaries of otherwise protected information considered by the agency." Defs. Mem. at 30-35. According to Defendants, OFAC's disclosures provide a basis for Plaintiff to understand the reasons for his designation and to challenge that designation through OFAC's delisting procedures. Defs. Mem. at 30. Defendants' argument is in error, however, as Plaintiff can legitimately claim constitutional

due process protection and OFAC's disclosures fall short of adequately apprising Plaintiff of the reasons for his designation.

Defendant first cursorily re-invoke their argument that Plaintiff cannot legitimately assert the protections of the Fifth Amendment's Due Process Clause. But, as previously explained, Plaintiff has asserted both presence and substantial connections to the United States, as he 1) held residence in the United States at the time of the designation; 2) traveled frequently to the United States and spent a substantial portion of his time there; 3) had all the indicia of family life in the United States, including having his children attend schools in the United States and participating in social clubs; and 4) maintained substantial business properties and interests in the United States. See Am. Compl., ¶¶ 85-112, 120-121; Pl.'s Opp. at 27-30. Defendants offer no rebuttal to this evidence of Plaintiff's presence in or his substantial connections to the United States.

Defendants next dispute Plaintiff's insistence that OFAC provide him "a full and complete understanding of the reasons for [his] designation." Defs. Mem. at 30 (quoting Pl.'s Opp. at 34). As an initial matter, Defendants adopt an incorrect framing, rendering Plaintiff's position as one where OFAC "must provide each SDNT 'a full and complete understanding of the reasons for [their] designation.'" Defs. Mem. at 34. However, few SDNTs are likely to be able to assert a constitutional due process right, as all SDNTs are "foreign persons," as that term is defined by the Kingpin Act, and most are unlikely to have either presence in the United States or substantial connections to this country. Accordingly, Plaintiff's argument is not that all SDNTs are deserving of "a full and complete understanding of the reasons for [their] designation." Rather, Plaintiff contends that—with respect to persons who can assert the protections of constitutional due process—the relevant case law demands a fulsome disclosure of the basis for action taken against them. *See, e.g.*, *Fares v. Smith*, 901 F.3d 315 (D.C. Cir. 2018).

Defendants respond by arguing that the Kingpin Act "expressly permits the Executive Branch to rely on classified information and [to] submit that information to a court for ex parte and in camera review." Defs. Mem. at 30. But Plaintiff has never argued otherwise and has not requested that this Court mandate OFAC to fully disclose the entire administrative record to Plaintiff to discharge its burden under the Due Process Clause. Instead, Plaintiff has simply argued that—to the extent that OFAC relies on classified evidence to support its designation of Plaintiff— OFAC must "ensure . . . notice and process via alternative means," including through "strictly necessary adaptations of ordinary administrative and judicial process . . ." *Fares*, 901 F.3d at 324. This may include, as one particular option available for the agency, the provision to a designee of "sufficiently specific 'unclassified summaries . . . [that] provide [Plaintiff] with the 'who,' 'what,' 'when,' and 'where' of the allegations." *Id*. (quoting *Kiaraldeen v. Ashcroft*, 273 F.3d 542, 548 (3d Cir. 2001)). Other options, as discussed in *Fares*, involve, for instance, allowing a designee's "cleared counsel" to review the classified portions of the administrative record to verify the basis for the government's redactions. *Id*. at 318, 323.

Furthermore, Defendants contend that "the D.C. Circuit has never concluded that OFAC must disclose to a SDNT each and every reason for its decision." Defs. Mem. at 30. However, none of the cases before that court have dealt with the matter so directly. See *Zevallos v. Obama*, 793 F.3d 106, 118 (D.C. Cir. 2015) (finding "because Zevallos knew the basis for his designation, no comparable due process violation existed here); *Fares v. Smith*, 901 F.3d 315, 325-326 (D.C. Cir. 2018) (lamenting plaintiff's decision "to mount an all-or-nothing challenge seeking the particular evidence against them" without "tak[ing] the multiple routes open to them to challenge their designation in a way that could have enhanced their procedural protections . . .").

18

Indeed, a closer reading of *Fares* implies a greater burden on OFAC than acknowledged by Defendants. While acknowledging the line of cases that permit the agency's reliance on classified evidence when making a designation, the *Fares* court stated that, "[a]s a consequence," OFAC "may provide designees with sufficiently specific 'unclassified summaries . . . ensuring that neither the [government's] sources nor national security were compromised, . . ." *Fares*, 901 F.3d at 324. Elsewhere, while noting that the use of redacted evidence makes "the risk of erroneous deprivation [] especially high," the *Fares* court found that, "in [those] narrow circumstances" where OFAC may rely on classified evidence to support a designation, courts "have authorized strictly necessary adaptations of ordinary administrative and judicial process to ensure a designee's notice and process via alternative means, while respecting compelling national security interests." *Id*. Nowhere in *Fares* is it suggested that—because OFAC has compelling national security interests that justify withholding portions of the administrative record—the agency is discharged of its burden under the Due Process Clause to provide a designee with adequate notice of the basis for its action against them.[4]

Defendants argue that—even if the *Fares* court did raise the specter of alternative procedural safeguards—it did not mandate their use by OFAC. Defs. Mem. at 32. According to Defendants, *Fares* "did not hold that such summaries are required by the Due Process Clause" and did not "establish a bright-line rule that OFAC must disclose each and every reason for its

---

[4] Defendants' reliance on *Jifry v. FAA*, 370 F.3d 1174 (D.C. Cir. 2004) is particularly inapposite to the matter before this court, as—in that case—the D.C. Circuit found that "the private interest" at stake there—i.e., the pilots' "interest in possessing FAA airman certificates to fly foreign aircraft outside of the United States—"pale[d] in significance to the government's security interests . . ." *Jifry*, 370 F.3d at 1183. Here, Plaintiff has had all of his substantial property interests in the United States blocked (and, with respect to many properties, subsequently executed upon and turned over to third parties); has had his family life in the United States upset; and has been subject to criminal prosecution—all a consequence of the challenged action.

designation decisions." Defs. Mem. at 33. While *Fares* may not have mandated a specific procedural safeguard to ensure adequate notice under the Due Process Clause, it did state that OFAC—to the extent that it relies on classified evidence—must adopt some alternative process by which it identifies the basis for its action to the designee. *Fares*, 901 F.3d at 319. Noting that the D.C. Circuit "ha[s] countenanced" disclosure of only the unclassified administrative record "in very limited, statutorily recognized circumstances," the *Fares* court stated that, "[i]n that narrow category of cases, other procedural safeguards sufficed to provide meaningful protections of due process interests . . ." *Id*. That provides clear indication that the D.C. Circuit views alternative procedural safeguards—such as unclassified summaries of the classified or privileged information or cleared counsel's access to the full administrative record—as necessary where OFAC withholds certain evidence relied upon for its decision. For Defendants to read *Fares* differently is to read out its discussion of due process in the context of an OFAC designation.

Defendants also seek to dispute the relevance of the Ninth Circuit's decision in *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965 (9th Cir. 2012) to the matter at hand. Defs. Mem. at 34. First, Defendants argue that *Al Haramain* involved an entity with legitimate claim to constitutional due process and that *Al Haramain* conflicted with long-standing precedent in the D.C. Circuit permitting use of classified information. Defs. Mem. at 34. Yet, Defendants overlook the fact that the *Fares* court cited *Al Haramain* approvingly throughout its decision, and the *Zevallos* court was at pains to distinguish the facts at hand from those before the Ninth Circuit in *Al Haramain* rather than to dispute the relevance of that case altogether. *Fares*, 901 F.3d at 322-324; *Zevallos*, 793 F.3d at 117 (noting that—unlike the petitioner in *Al Haramain*—Zevallos "was fully equipped to rebut Treasury's rationale . . ."). Nowhere in these cases does the D.C. Circuit distinguish its views on the process due a designee from *Al Haramain*.

Indeed, as explained above, the *Fares* court's reading of the state of law in the circuit suggests that the process due a designee may be even more extensive than that set forth in *Al Haramain*.

Regardless, Defendants claim that OFAC has provided Plaintiff with unclassified and non-privileged summaries of otherwise protected information that "more than adequately apprise him of the basis for OFAC's decision to designate him as a SDNT." Defs. Mem. at 35. First, Defendants argue with Plaintiff's characterization of the evidentiary memorandum underlying his designation as "too heavily redacted to allow [Plaintiff] to understand the reasons for his designation." Defs. Mem. at 35. In response, Defendants state that OFAC "ha[s] provided the maximum notice consistent with the national security and law enforcement interests of the United States." *Id.*

Whatever the basis for the redactions to the evidentiary memorandum, though, those redactions clearly prevent Plaintiff from understanding the basis for OFAC's action against him. As rehearsed in his complaint and cross-motion, OFAC's evidentiary memorandum redacted all corresponding material related to the factual conclusions and findings for the designation determination except for a partial sub-heading and two sentences. *See* Am. Compl. ¶ 34-41; Pl.'s Opp. at 35; AR at 0025, 0027. Such disclosure simply does not provide Plaintiff with a basis to understand his designation. Moreover, and consistent with *Fares*, the scope of the redactions to the evidentiary memorandum mandates OFAC to provide sufficient alternative procedural safeguards to apprise Plaintiff of the reasons for his designation. *See supra* at 19-20.

In addressing the sufficiency of the alternative means that have been provided, Defendants contend that OFAC's press release and unclassified and non-privileged summaries "explain[] OFAC's determination that Plaintiff" meets the criteria for designation under the Kingpin Act. Defs. Mem. at 36. According to Defendants, the information contained in this material "permits Plaintiff to submit an administrative delisting petition, where he can argue and submit evidence

that 'insufficient basis exists for the designation,' or that 'the circumstances resulting in the designation no longer apply.'" Defs. Mem. at 37. In Defendants' view, Plaintiff "can attempt to demonstrate that he lacked any involvement with El Aissami; never laundered drug proceeds, either generally or through PDVSA; is not associated with the transport of cocaine to the Middle East and Asia; and did not act as El Aissami's business representative, money manager, or frontman . . ." Defs. Mem. at 37-38.

It is worthwhile to consider how Plaintiff can meaningfully challenge such conclusory allegations. In a parenthetical, Defendants cite to a case suggesting that a designee can conduct an audit to show his lack of involvement in illicit activities. Defs. Mem. at 38 (citing *Bazzi v. Gacki*, 468 F. Supp. 3d 70, 80 (D.D.C. 2020)). But how can Plaintiff conduct such an audit, when OFAC has failed to identify the relevant time frames of the alleged conduct, the means by which those purported activities occurred, and the businesses or assets that Plaintiff is alleged to have used to further this conduct? OFAC's position is divorced from reality, as any audit would need to have a scope which would require particulars such as the who, what, where, and when of the information to be audited. Merely saying that a designated party can conduct an audit to disprove allegations of illicit activities without particulars as to those allegations is non-sensical and Plaintiff could have no real confidence whether the scope of any such audit would be adequate. In sum, OFAC's summaries are conclusory in nature, and without additional details with respect to the types of particulars identified above, Plaintiff would have no meaningful opportunity to address them.

Additionally, none of the disclosures made to Plaintiff meet the standard set forth in *Fares*. As explained above, the *Fares* court found that—where OFAC lawfully relies on classified evidence for a designation—it must utilize "other procedural safeguards . . . to provide meaningful protections of due process interests . . ." *Fares*, 901 F.3d at 319. One of these alternative procedural

safeguards—unclassified summaries of classified or otherwise privileged information contained in the administrative record—must be "sufficiently specific" and provide a designee "with the 'who,' 'what,' 'when,' and 'where' of the allegations." *Id*. at 324 (quoting *Kiaraldeen*, 273 F.3d at 548). Failing such "sufficiently specific" unclassified summaries (or any other alternative safeguard that adequately apprise a designee of the bases for OFAC's action) OFAC risks falling short of its obligations under the Due Process Clause. *See id*. at 324 (noting that precedent "countenance[s] the use of summaries under the most pressing circumstances . . ."). Notably, the *Fares* court found that substantive notice was provided mainly from a three-page summary of classified information, which included numerous details of the alleged involvement in money laundering for drug cartels; organizations and time-periods during which the plaintiffs allegedly provided money laundering services to the drug cartels, and specific examples of the ways in which the money laundering was carried out. *Id*. at 125-28.

OFAC's unclassified summaries in this matter, however, lack the requisite specificity—as was found to have existed in *Fares*—to apprise Plaintiff of the reasons for his designation and allow him a meaningful opportunity to challenge his designation. *See* Pl.'s Op. at 39-40. For instance, one of OFAC's summaries states that: "Lopez Bello is identified as the 'business representative,' 'money manager,' and 'money launderer' for El Aissami." AR at 0658; Defs. Op. at 37. Nowhere in this summary does OFAC detail during what date he met those characterizations nor what specific conduct supports such allegations against Plaintiff. Such additional information is not superfluous but critical to allowing Plaintiff to meaningfully challenge his designation.

Finally, nowhere in any of OFAC's disclosures does the agency state that the allegations contained therein comprise the universe of the reasons for Plaintiff's designation. While that may be understandable from OFAC's perspective, Defs. Opp. at 30-33, it does not suffice for the

reasons described above: where OFAC reasonably withholds disclosure of certain portions of the administrative record on national security or law enforcement grounds, the agency must adopt "other procedural safeguards . . . to provide meaningful protections of due process interests . . ."[5] *Fares*, 901 F.3d at 319.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion for summary judgment and enter judgment in favor of Plaintiff on all claims.

Dated: February 6, 2022                                  Respectfully submitted,


                                                         /s/ Erich C. Ferrari
                                                         Erich C. Ferrari, Esq.
                                                         FERRARI & ASSOCIATES, P.C.
                                                         1455 Pennsylvania Avenue, NW
                                                         Suite 400
                                                         Washington, D.C. 20004
                                                         Telephone: (202) 280-6370
                                                         Fax: (877) 448-4885
                                                         Email: ferrari@falawpc.com
                                                         D.C. Bar No. 978253

                                                         Attorney for Plaintiff
                                                         *Samark Jose López Bello*

---

[5] Defendants contest Plaintiff's claim that the *Fares* court noted that "[d]isclosure of some but not all of the allegations against a designee impairs their ability to fully clear their names for delisting," pointing out that the court had merely iterated that this is something that the plaintiffs in that matter could have argued. Defs. Mem. at 33. According to Defendants, a mere "observation about what an SDNT may argue does not establish a bright-line rule that OFAC must disclose each and every reason for its designation decisions." *Id*. Yet, considering the context of the decision in *Fares*, the court was not merely "observ[ing]" what arguments—valid or not—the plaintiffs could have made, but rather criticizing plaintiffs' counsel for failing to make arguments that had case support (e.g., the court's citation to *Al Haramain*) and that would likely have found favor before the D.C. Circuit.